GARY KAHN,

      Plaintiff,

v.

CLEVELAND CLINIC FLORIDA
HOSPITAL,

      Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Defendant's Motion Concerning Award of Attorneys' Fees (DE# 198, 6/6/18).

## BACKGROUND

On March 30, 2017, the plaintiff filed the operative complaint asserting a negligence claim (Count I) and a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (hereinafter "ADA") (Count II). See Plaintiff's Second Amended Complaint for Damages and Injunctive Relief (DE# 47, 3/30/17) (hereinafter "SAC"). In its answer to the SAC, the defendant admitted that "[its] facility is a place of public accommodation and is covered by the relevant provisions of the ADA and the [ADA Accessibility Guidelines (ADAAG)]." Defendant's Answer and Affirmative Defenses to Second Amended Complaint (DE# 49 at ¶ 45, 4/11/17).

On October 27, 2017, the defendant moved for partial summary judgment on both claims. See Defendant's Motion for Partial Summary Judgment (DE# 80,

10/27/17). On December 14, 2017, the Court issued an Order finding that genuine issues of material fact precluded summary judgment for the defendant on the plaintiff's negligence claim and reserved ruling on the defendant's motion with respect to the ADA claim. See Order (DE# 133, 12/14/17).

The Court held a four-day jury trial on the negligence claim and the jury returned a verdict for the defendant. See Verdict (DE# 160, 1/12/18). On April 3, 2018, the Court held a status hearing wherein it denied as moot the defendant's motion for summary judgment as to the ADA claim, set a deadline for the defendant to notify the Court of any changes to the facility, permitted the plaintiff to re-inspect the facility and set a briefing schedule on the issue of entitlement to attorney's fees. See Order (DE# 192, 4/3/18).

On June 6, 2018, the defendant filed the instant motion. See Defendant's Motion Concerning Award of Attorneys' Fees (DE# 198, 6/6/18) (hereinafter "Motion"). The plaintiff filed his response in opposition on June 25, 2018. See Plaintiff's Response to Defendant's Motion Concerning Award of Attorneys' Fees and Support for the Claim for Entitlement to Attorneys F[e]es and Costs (DE# 201, 6/25/18) (hereinafter "Response"). The defendant filed its reply on July 6, 2018. See Defendant's Reply in Support of its Motion Concerning Award of Attorneys' Fees (DE# 204, 7/6/18) (hereinafter "Reply"). On August 1, 2018, the plaintiff filed a notice of supplemental authority. See Plaintiff's Notice of Supplemental Authority in Support of its Response to Defendant's Motion Concerning Award of Attorneys' Fees and Costs (DE# 205, 8/1/18) (hereinafter "Notice of Supplemental Authority").

This matter is ripe for adjudication.

2

## STANDARD OF REVIEW

The defendant argues that the Court no longer has subject-matter jurisdiction over the plaintiff's ADA claim. <u>See</u> Motion at 3.

The jurisdiction of the federal courts is limited to live cases or controversies. U.S. Const. Art. III, § 2. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Alabama Hospital Ass'n v. Beasley</u>, 702 F.2d 955, 961 (11th Cir. 1983) (internal citations omitted). The federal courts do not have jurisdiction to "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." <u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992) (quoting <u>Mills v. Green</u>, 159 U.S. 651, 653 (1895)).

Article III's live case or controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." <u>Horton v. City of St. Augustine Florida</u>, 272 F.3d 1318, 1326 (11th Cir. 2001) (quoting <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990)). "If events that occur subsequent to the filing of a lawsuit ... deprive the court of the ability to give the plaintiff ... meaningful relief, then the case is moot and must be dismissed." <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting <u>Troiano v. Supervisor of Elections</u>, 382 F.3d 1276, 1281-82 (11th Cir. 2004)).

"The doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior." <u>Troiano</u>, 382 F.3d at 1282. The Supreme Court has explained that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled

to leave 'the defendant ... free to return to his old ways.'" United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)). The voluntary cessation of alleged wrongful conduct will only moot a claim if "it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Sheely, 505 F.3d at 1177 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)).

The Eleventh Circuit has stated that at least three factors are relevant when evaluating an assertion of mootness based on a private defendant's voluntary cessation of allegedly wrongful conduct:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

Sheely, 505 F.3d at 1184. "Generally, the 'party asserting mootness' bears the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1351 (11th Cir. 2011) (quoting Laidlaw, 528 U.S. at 189).

## ANALYSIS

**1.      Whether the Plaintiff's ADA Claim is Moot**

The defendant maintains that the plaintiff's ADA claim is moot because many of the purported violations in the plaintiff's most recent expert report[1] were found in

---

[1] On May 11, 2018, the plaintiff filed a new expert report prepared by Carlos Herrera. See Plaintiff's Notice of Filing of Expert's Post Compliance Remediation

"restrooms . . . which were not designated as nor required to be accessible" and "the remaining items were remediated or do not otherwise constitute violations of the ADA." Motion at 2-3. The defendant thus argues that "[b]ecause the ADA claim is moot, Plaintiff is not entitled to any of his attorney's fees." Id. at 3.

## A.    Nature of Plaintiff's ADA Claim

At the outset, the parties dispute the nature of the plaintiff's ADA claim. The defendant argues that "[b]ecause Plaintiff cannot contest that Cleveland Clinic remediated all of the purported ADA violations in his May 3, 2018 Expert Report, Plaintiff now attempts to transform this case from an ADA lawsuit regarding architectural barriers to an ADA lawsuit concerning policies and practices." Reply at 4-5. The plaintiff maintains that his ADA claim involves both physical barriers and policies, practices and procedures which violate the ADA. See Response at 8 (stating that "Defendant's motion solely focuses on Plaintiff's allegations of physical barriers that violate the ADA and completely ignores Plaintiff's repeated demonstrations that Defendant had policies, practices, and procedures that discriminated against disabled persons and resulted in violations of the ADA.") (footnote omitted).

The Court finds that the plaintiff has pled both architectural barriers and policies

---

Accessibility Inspection Report (DE# 195, 5/11/18) (hereinafter "Final Report"). Mr. Herrera is the plaintiff's second expert. Mr. Herrera inspected the defendant's facility on February 26, 2018 and May 3, 2018. Mr. Herrera prepared the Final Report after the May 3, 2018 visit. Id. Prior to this, the plaintiff's first expert, William Norkunas, inspected the defendant's facility on January 30, 2017, October 5, 2017 and October 30, 2017. See Motion at 2. Mr. Norkunas prepared two expert reports dated February 25, 2017 (DE# 99-1 at 1-23) and November 8, 2017 (DE# 99-1 at 24-52). Id.

and procedures which violated the ADA. The SAC alleges that:

> The Defendant did not have adequate policies, practices and/or
> procedures in place to prevent harm to people with disabilities, and in fact
> had implemented a policy and procedure which called for the use of the
> ADA bathrooms as changing rooms and for the storage of soiled and
> contaminated linen in free standing bins.

SAC at ¶ 53. Throughout this litigation, the plaintiff has consistently argued that the

defendant's use of accessible restrooms as changing rooms and to store bins violated

the ADA.[2] The plaintiff has also argued that the location of the trash bin encroaches

over the clear floor space needed for wheelchair users.[3]

The defendant states that in the "Second Amended Complaint, Plaintiff

---

[2] See February 25, 2017 Expert Report (DE# 99-1 at 18) (stating that soiled linen
storage interfered with the clear floor space needed for a wheelchair); November 8,
2017 Expert Report (DE# 99-1 at 36) (noting trash containers and soiled linen located
inside accessible restroom); Final Report (DE# 195-1 at 6) (stating that the "[s]oiled
[l]inen bin encroaches over seat cover dispenser clear floor space"). The defendant
notes that in the Final Report, Plaintiff's expert did not find any soiled and contaminated
linen bins in the accessible restrooms. See Reply at 8. The fact that the plaintiff's expert
did not find any soiled or contaminated linen bins encroaching on the clear floor space
does not necessarily mean that the defendant will not return to the practice of
employing accessible restrooms as changing rooms in the future. See Discussion, infra.
For the reasons stated below, the plaintiff's ADA claim with respect to the trash bin and
linen bins is not moot.

[3] See November 8, 2017 Expert Report (DE# 99-1 at 40-41) (stating that "[t]he
placement of this trash container is clearly an overt violation of the ADA" and that "[t]he
1991 ADAAG is clear as to the requirements for providing clear maneuvering clearance
for wheelchairs at this sink."); Final Report (DE# 195-1 at 3) (stating that "[t]rash bin
encroaches over maneuvering clearance on the pull side of the door" in violation of
ADAAG § 4.13.6 and 2010 ADA Code § 404.2.4); id. at 4 (stating that the "[t]rash bin
encroaches over [the] paper towel dispenser clear floor space"); id. at 6 (stating that the
"[t]rash bin encroaches over seat cover dispenser clear floor space"); id. at 9 (same); id.
at 10 (stating that the "[t]rash bin encroaches over maneuvering clearance on the pull
side door"); id. at 13 (same). The defendant argues that moveable objects such as
trash bins are not ADA barriers and in any event the plaintiff's claim is moot because
defendant has removed the trash bins from the accessible restrooms. See Motion at 7.
The Court will address both arguments below.

contends that storing of receptacles holding soiled and contaminated linen constitute violations of OSHA, not the ADA." Reply at 8. While other parts of the SAC mention OSHA, paragraph 53 of the SAC alleges an ADA violation and does not mention OSHA. The Court finds that the defendant's policy, practice or procedure with respect to the soiled or contaminated linen bins and the trash bins are part of the plaintiff's ADA claim.

Next, the defendant argues that "[e]ven if Plaintiff could make [a] policy and procedure argument, which he cannot since his Second Amended Complaint and expert reports relate to architectural barriers, that argument is still deficient" because "nowhere in the Second Amended Complaint or elsewhere does Plaintiff cite any standard which states that the placement of bins in an accessible restroom is a violation of the ADA." Reply at 8. The SAC alleges that "[t]here was inadequate clear turning space in violation of section 603.2 of the 2010 ADAAG regulations." SAC at ¶ 49(a). Additionally, the plaintiff's expert reports cite to the linen bins and trash bins as encroaching on the clear floor space in violation of the ADA. See, e.g., February 25, 2017 Expert Report (DE# 99-1 at 18) (stating that soiled linen storage interfered with the clear floor space needed for a wheelchair); November 8, 2017 Expert Report (DE# 99-1 at 36) (noting trash containers and soiled linen located inside accessible restroom); Final Report (DE# 195-1 at 6) (stating that the "[s]oiled [l]inen bin encroaches over seat cover dispenser clear floor space").

In sum, the plaintiff's ADA claim includes the defendant's policy, practice or procedure of using accessible restrooms as changing rooms resulting in the encroachment of clear floor space by linen bins and the defendant's policy, practice or

procedure of placing trash bins in certain locations which also resulted in the encroachment of clear floor space.

### B. Whether the Trash Bin and the Linen Bins Can Constitute Barriers under the ADA

. The parties also dispute whether the trash bin and the linen bins can constitute barriers under the ADA. The defendant argues that "the plain language of the ADA states that the ADA applies to fixed or built in elements of a place of public accommodation and not to movable objects such as linen receptacles and a trash bin." Reply at 2. Therefore, the defendant argues that the plaintiff has not identified at policy or practice which violates the ADA. Id. at 2-3. The plaintiff cites to cases in the Ninth Circuit and in the California lower courts which support his position that moveable objects can constitute ADA violations and a defendant's removal of obstructing objects does not moot a case. See Response at 17.

The defendant cites to Ass'n for Disabled Americans, Inc. v. Key Largo Bay Beach, LLC, 407 F. Supp. 2d 1321, 1322 (S.D. Fla. 2005) and other cases which found moveable objects were not barriers under the ADA. Id. at 9-10. In Key Largo Bay Beach, this Court found that portable lounge chairs could not be the proper subject of an injunction under the ADA:

> The other complaint as to the life saving equipment is that it is inaccessible . . . due to lounge chairs being moved into the path leading to it, and/or that a light fixture obstructs access. On the first issue, it is clearly futile for the Court to enter an injunction requiring lounge chairs to be moved **where they are of the typical portable variety, constantly moved not only by staff, but also by guests**. For this reason as well, Plaintiffs fail to sustain their burden to show entitlement to injunctive relief under the ADA. This claim is not a violation and is denied.

Id. 1343-44 (emphasis added). This Court made a similar ruling with respect to plastic

waste cans in the restrooms:

> Plaintiffs next allege that injunctive relief is warranted because their testifying expert has observed plastic waste cans on two occasions that have been moved into a 30 inch by 48 inch clear floor space required by ADAAG 4.19 in the restroom areas. **As [defendant's expert] testified, he witnessed the plastic waste cans being moved from the clear floor space during his visit on March 29, 2005**. . . . As with the lounge chairs on the pool deck, portable plastic waste cans are not an item susceptible of an enforceable injunction. Accordingly, injunctive relief is denied as to this item.

Id. at 1346 (emphasis added).

Citing Key Largo Bay Beach, this Court in National Alliance for Accessibility, Inc. v. Windsor Investments (3600 S.W. 22nd) LLC., similarly found that a wastepaper basket in the women's restroom was not a barrier under the ADA:

> Plaintiffs argue that the women's restroom is not ADA compliant because it contains a trash can that is obstructing access to the paper towel dispenser and stall. "[P]ortable . . . waste cans are not an item susceptible of an enforceable injunction." Ass'n for Disabled Americans, Inc. v. Key Largo Bay Beach, LLC, 407 F. Supp. 2d 1321, 1346 (S.D. Fla. 2005). That is because **"it is clearly futile for the Court to enter an injunction requiring [trash cans] to be moved where they are of the typical portable variety, constantly moved not only by staff, but also by guests."** Id.

DE# 76 at 10, Case No. 13-cv-20285-JAL (S.D. Fla. Sept. 29, 2014) (emphasis added).

This Court further noted that the defendant had instructed its staff to relocate portable objects when displaced:

> In any event, Defendant indicates that "[u]pon observing or hearing that moveable items have been relocated to an area in which they are not supposed to be, Restaurant employees will promptly work to have the moveable item moved back to its correct location." (Supplemental Lynd Dec., 52-1 ¶ 9). Accordingly, the Court finds that the placement of the trash can in the women's restroom does not constitute a barrier under the ADA.

Id.

The Court finds that the instant case is distinguishable from <u>Key Largo Bay Beach</u> and <u>Windsor</u>. Here, the record has not established that the trash bin and the two linen bins were easily moveable.[4] Neither party has presented the Court with any record evidence concerning the weight of these objects and whether a wheelchair user would easily be able to move them. In one of the reports, the plaintiff's expert stated that:

> different obstacles located within the restroom clear maneuvering
> space needed by wheelchair users (linen bins) have wheels.

> But this expert, in his years of going into hospitals, has encountered
> wheeled objects with locking mechanism[s] on their wheels. And it is nigh
> impossible for wheelchair bound patients to unlock said wheels - so any
> thought that receptacles, such as trash bins, that appear to be of a typical
> portable variety, and are constantly being moved not only by staff and
> also by guests, is unfounded to the real world situation.

November 8, 2017 Expert Report (DE# 99-1 at 36). Notably, however, the plaintiff's expert report does not state whether the linen bins used by the defendant had locking mechanisms on the wheels and, if so, whether they were kept in the locked position. In any event, based on the undeveloped record in this case, the Court cannot readily conclude that the trash bin and linen bins encroaching on the clear floor space were easily movable and therefore did not constitute barriers under the ADA.

Additionally, the defendant has not shown that the trash bin and the linen bins were mere temporary obstructions. Unlike <u>Key Largo Bay Beach</u> and <u>Windsor</u>, in the instant case there is no evidence to suggest that the trash bin and linen bins were "constantly moved" by the defendant's staff and visitors to the facility. To the contrary,

_____

[4] It is possible that information concerning the movability or immovability of these bins exists in the record and the parties have simply not provided the Court with record citations.

the plaintiff had previously filed an affidavit which, at the very least, suggests that the defendant had a policy, practice or custom of maintaining the trash bin and the two linen bins in specific locations in the accessible restrooms. See Affidavit of Luz A. Warford (DE# 128-2 at ¶7,12/8/17) (attesting as follows "When I was assigned to clean the bathroom depicted in Exhibit 'B' attached hereto, part of my responsibilities included ensuring that the plastic trash bin was positioned under the paper towel dispenser and at the door entrance to the right is the red basket, right away is the blue basket. Exhibit 'B' accurately depicts the position where this plastic trash bin was normally located."). The plaintiff also cites to record evidence that the defendant employed the accessible restrooms as changing rooms since 2001,[5] Response at 11, thus suggesting the long-standing presence of linen bins encroaching on the clear floor space in the accessible restrooms.

In Crandall v. Starbucks Corp., 249 F. Supp. 3d 1087, 1095 (N.D. Cal. 2017), the district court found that moveable merchandise displays could be barriers under the ADA:

> Defendant insists that Plaintiff is not entitled to summary judgment

---

[5] While the plaintiff has not shown that the practice of using accessible restrooms as changing rooms alone would violate the ADA, the plaintiff has presented expert reports which state that the encroachment of clear floor space by these bins would violate the ADA and the ADAAG. See, e.g., Final Report (DE# 195-1 at 6) (stating that the "[s]oiled [l]inen bin encroaches over [the] seat cover dispenser clear floor space" in violation of 2010 ADA Code § 305.3 and ADAAG § 4.2.4). The Court recognizes that as of the date of the plaintiff's expert's final inspection, the defendant had removed the linen bins from its accessible restrooms and as of the date of the filing of the instant motion, the defendant represented that the trash bins had been removed from accessible restrooms. See Motion at 7. However, and for the reasons discussed below, the defendant's actions in removing the trash bin and the linen bins from the accessible restrooms does not moot the plaintiff's ADA claim.

because the cashier counter access barrier Plaintiff encountered is temporary and moveable. ADA regulations "explain that the requirement that public accommodations maintain 'readily accessible' facilities and equipment 'does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." 28 C.F.R. § 36.211(b). Thus, "an isolated or temporary hindrance to access does not give rise to a claim under the ADA." Chapman II, 779 F.3d at 1008 (quotations and citation omitted).

***

**Defendant insists that the obstructed path to the cashier's counter that Plaintiff encountered was . . . an "isolated or temporary interruption" in access . . . . Not so. The merchandise display was located in the center of the store, narrowing the path of travel, when Plaintiff visited the store on January 17, 2015 and on the two dates later that spring when Plaintiff's private investigator visited the store**, and it is undisputed that when there are customers in the store the displays make the path of travel too narrow. Aside from evidence that they were removed sometime thereafter, the record is silent as to whether or how often [the defendant's] employees moved the merchandise displays around. Defendant maintains that the merchandise displays are freestanding and are "constantly being pushed out of position by customers throughout the day[,]" (Dkt. No. 69 at 13), but they cite no evidence to support that proposition and the Court has found none in the record. Nor has Defendant argued, let alone adduced any evidence, that when customers move the displays "out of position" the path of travel becomes accessible—i.e., that the barrier is removed. And if the Court accepts as true that customers moved the displays around, the record reflects that [the defendant's] employees returned merchandise displays to their original positions during their 8 minute sweeps, and when the merchandise displays were "in position" the path was too narrow when customers were present. Thus, **even drawing all inferences in Defendant's favor, a reasonable trier of fact could not find that the merchandise displays were only temporary barriers. Thus, the access to the cashier counter is not the type of isolated and temporary access barrier that falls outside the protective reach of the ADA.**

Id. at 1110-11 (emphasis added). The court similarly rejected the defendant's argument that moveable furniture could not be a barrier under the ADA. Id.

By contrast, in Rush v. Castle & Cooke Corona, Inc., the district court granted

summary judgment to the defendant on the plaintiff's ADA claim that a waste receptacle in the women's restroom violated the clear floor space requirement. No. CV 10-8952-GW(PLAX), 2011 WL 13109296, at *7 (C.D. Cal. Nov. 10, 2011). The court noted that "[i]t [was] undisputed that the waste basket in the women's restroom [was] a plastic, moveable object not fixed to the floor." Id. The court further noted that the plaintiff's expert did not cite this as a barrier in his report. Id. Additionally, the defendant submitted evidence through its expert report that "[t]he movable trash can [was] often rearranged during the cleaning process. This [was] an interuption [sic] for maintenance or repair not a violation." Id. The defendant thus argued that it was entitled to summary judgment "because a temporary, moveable object which might have obstructed the strike-side clearance on an isolated occasion cannot constitute a discriminatory barrier under the ADA warranting injunctive relief . . . ." Id. The court noted that:

> [w]hile the ADAAG do not expressly address moveable objects, the ADA's implementing regulations provide that a "public accommodation shall maintain in operable working condition those features of facilities and equipment that [were] required to be readily accessible to and usable by persons with disabilities' and proceed[ed] to state that 'this section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.'"

Id. (quoting 28 C.F.R. § 36.211(a)&(b)). It further noted that isolated instances were not violations under the ADA. Id. Ultimately, the court granted summary judgment to the defendant as to the trash can because the plaintiff failed to meet her burden of proof:

> the "Plaintiff . . . provided virtually no evidence supporting her argument that the location of the trash can was anything other than an isolated incident. First, she provide[d] no expert report in support of her assertion that the location of the trash can even constituted an architectural barrier, in contrast to Pier 1, who provide[d] an expert report opining that the trash can is occasionally moved for cleaning purposes and that the trash can is currently located so that it does not block the door. . . . Second, Plaintiff

13

> fails to direct the Court to any deposition testimony demonstrating that she
> encountered a problem with the waste receptacle blocking the bathroom
> door other than on her first visit to [the defendant's store] . . . . Moreover,
> Plaintiff provide[d] no evidence stating that she could not move the plastic
> waste basket herself, or that she could not, at some point, have asked a
> [store] employee for assistance.

Id.

The instant case is distinguishable from Rush. The trash bin and the linen bins were present in the accessible restroom used by the plaintiff on the day he visited the defendant's facility. SAC at ¶ 23 (alleging that "KAHN was unable to get a proper hold of the grab bar because the usable bathroom maneuvering area was reduced by the three (3) free standing trash and soiled linen laundry bins."). Additionally, the plaintiff's three expert reports note the presence of linen bins and/or trash bins in the accessible restrooms which the reports allege encroach on the clear floor space. See February 25, 2017 Expert Report (DE# 99-1 at 18) (stating that soiled linen storage interfered with the clear floor space needed for a wheelchair); November 8, 2017 Expert Report (DE# 99-1 at 36) (noting trash containers and soiled linen located inside accessible restroom); Final Report (DE# 195-1 at 6) (stating that the "[t]rash bin encroaches over seat cover dispenser clear floor space"). Thus, this is not a case where the plaintiff and/or the plaintiff's experts encountered the bins on a single, isolated occasion. Based on this record, the Court cannot conclude that the trash bin and linen bins were mere temporary obstructions. As to the movability or immovability of the three bins, the Court again notes that the parties have not directed the Court to record evidence.

The instant case is also distinguishable from Wilson v. Norbreck LLC, No. S-04-690 DFL JFM, 2006 WL 2651139, at *3-4 (E.D. Cal. Sept. 15, 2006) where the

14

district court found that the plaintiff failed to establish a violation of the clear floor space by the placement of two wicker wastebaskets in the men's restroom. The court noted that:

> the wastebaskets [were] light in weight. The defense expert, himself a disabled person in a motorized wheelchair, credibly testified that the wastebaskets present[ed] no barrier to a disabled person. Accordingly, the court [found] that the wastebaskets [were] easily moved to provide any needed access to the sinks. If the wastebaskets are in the way, which ha[d] not been established, the vast majority of disabled persons, including [the plaintiff], could with little effort slide them a few inches to the side. For all of these reasons, the court [found] that the wastebaskets were not a barrier or impediment to plaintiff and did not violate the applicable code sections.

Id. at *4. Here, the parties have not cited to any record evidence concerning whether "the vast majority of disabled persons" would be able or unable to move the trash bin and the linen bins. Thus, the defendant has not shown that the trash bin and the linen bins cannot constitute barriers under the ADA.

In sum, the Court acknowledges that there are cases, including cases in the Southern District of Florida, where district courts have dismissed ADA claims as they pertain to moveable objects. See Key Largo Bay Beach, 407 F. Supp. 2d at 1346. However, in those cases the objects were "of the typical portable variety, constantly moved not only by staff, but also by guests." Id. Here, the record is insufficient as to the movability and immovability of the trash bin and linen bins at issue and there is no record evidence that visitors and staff regularly moved the bins. Rather, the record seems to indicate that the bins remained in certain locations. Thus, after a careful review of the case law, the Court finds that the plaintiff has pled an ADA claim based on the trash bin and linen bins encroaching on the clear floor space in accessible

15

restrooms.

## C. Applicability of <u>Sheely</u>

The parties also dispute whether the factors discussed in <u>Sheely v. MRI</u>

<u>Radiology Network, P.A.</u>, 505 F.3d 1173, 1183 (11th Cir. 2007) apply to the instant

case. In <u>Sheely</u>, the Eleventh Circuit addressed "whether the plaintiff's claims for

injunctive and declaratory relief under Title III of the [ADA] . . . became moot after the

defendant voluntarily ceased the alleged misconduct." <u>Id.</u> at 1177. The Eleventh Circuit

"conclude[d] that the plaintiff's claims [were] not moot because the defendant ha[d] not

met its heavy burden of showing under controlling law that it [was] 'absolutely clear that

the allegedly wrongful behavior could not reasonably be expected to recur.'" <u>Id.</u> (quoting

<u>Laidlaw</u>, 528 U.S. at 189). In reaching this conclusion, the Eleventh Circuit noted that:

> at least the following three factors [are relevant]: (1) whether the
> challenged conduct was isolated or unintentional, as opposed to a
> continuing and deliberate practice; (2) whether the defendant's cessation
> of the offending conduct was motivated by a genuine change of heart or
> timed to anticipate suit; and (3) whether, in ceasing the conduct, the
> defendant has acknowledged liability.

<u>Id.</u> at 1184.

In the instant case, the plaintiff argues that the defendant has failed to show that

the plaintiff's ADA claim is moot because the defendant does not meet any of the

factors listed in <u>Sheely</u>. <u>See</u> Response at 9-15. The defendant maintains that <u>Sheely</u>,

505 F.3d 1173 and cases like <u>Sheely</u> "are not relevant based on the facts of this case"

because "[t]he barriers identified by [the plaintiff's experts] are physical barriers and not

policies and practices like those discussed in <u>Sheely</u>." Motion at 10; <u>see also</u> Reply at 5

(maintaining that "the factors in <u>Sheely</u> are not relevant to determining whether the case

is moot" because the "Plaintiff complains of architectural barriers as set forth in his Second Amended Complaint and in his May 3, 2018 Expert Report.") (emphasis omitted). The defendant further notes that "courts have distinguished <u>Sheely</u> in instances where a defendant has made structural changes, such as those made by Cleveland Clinic, and 'it would be unreasonable to think that [a defendant] would remove the improvements.'" Motion at 10 (quoting <u>National Alliance for Accessibility, Inc. v. Walgreen Co.</u>, No. 3:10-cv-780, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011)); <u>see also</u> Reply at 5 (citing additional cases). Thus, the defendant argues that "it is clear that once Cleveland Clinic remediated the purported ADA barriers alleged by Plaintiff, the ADA claim became moot." Reply at 7.

The Court finds that <u>Sheely</u> applies to the instant case. While the plaintiff in <u>Sheely</u> challenged a discriminatory policy prohibiting service dogs, there is nothing in the <u>Sheely</u> opinion that limits the factors listed in <u>Sheely</u> to only those ADA cases challenging a discriminatory policy. More recently, the Eleventh Circuit has applied the same factors listed in <u>Sheely</u> to a case involving architectural barriers under the ADA. <u>See</u> <u>Kennedy v. Omegagas & Oil, LLC</u>, No. 18-10302, 2018 WL 4183462 (11th Cir. Aug. 31, 2018) (<u>per</u> <u>curiam</u>). Thus, the Court finds the factors listed in <u>Sheely</u> are relevant here.

## D.  The <u>Sheely</u> Factors

As noted above, the Eleventh Circuit finds at least three factors relevant in voluntary cessation cases:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a

17

genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

Sheely, 505 F.3d at 1184. The Court will address these factors below.

### i. Whether the Challenged Conduct Was Isolated or Unintentional

With respect to the first factor, the Eleventh Circuit has noted that:

> courts are more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly. Conversely, [courts] are more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a "continuing practice" or was otherwise deliberate.

Sheely, 505 F.3d at 1184-85.

The plaintiff argues that the first factor is not met because "[n]early across the board, every physical barrier encountered by Plaintiff, detailed by counsel in legal pleadings, and cited by [the plaintiff's first expert] in his two expert reports still remained at least through the date of [the plaintiff's second expert]'s first inspection on February 26, 2018. Many of the physical barriers remained even longer and were still present during . . . [the] reinspection on May 3, 2018." Response at 10. The plaintiff further argues that:

> testimony both in depositions and at trial made evident that the policy and practice of using the "accessible" restrooms located in the radiology department as changing rooms resulting in the positioning of storage bins in violation of the ADA long predated this incident and remained in effect at least until April 3, 2018, when counsel for Defendant announced verbally in a status conference that Cleveland Clinic was changing its policy.

Id. at 11. The plaintiff further notes that "as of the date of Plaintiff's fifth expert inspection, three (3) of the five (5) restrooms continued to have trash bins positioned in

18

violation of the ADA." Id. at 11; see also id. at 15 (noting that defendant's "procedure and policy" of maintaining soiled linen bins in accessible restrooms began in 2001, when the facility opened).

Here, the Court finds that the first factor is neutral. On the one hand the record suggests that the alleged violations have been ongoing for a substantial period of time. At least as to the linen bins, the alleged violation has been ongoing since 2001 and the defendant has had notice of some of the plaintiff's alleged ADA violations since the filing of this lawsuit on August 18, 2016. On the other hand, there is no record evidence from which the Court can conclude that the defendant engaged in "a malicious or reckless disregard for the ADA or for disabled [patients]." Kennedy v. Omegagas & Oil, LLC, No. 18-10302, 2018 WL 4183462, at *3 (11th Cir. Aug. 31, 2018). In Houston v. S. Mgmt. Corp., No. 213CV164FTM38UAM, 2013 WL 12304550, at *2 (M.D. Fla. Oct. 31, 2013), the district court "give no weight either towards or against a finding of mootness" where "the [c]ourt [was] not in a position to evaluate the first Sheely factor because there [was] insufficient evidence to determine whether Defendant's alleged noncompliance with the ADA at the time of filing of the Amended Complaint was isolated or unintentional as opposed to a continuing and deliberate practice." Similarly here, the Court concludes that the first factor does not favor either party.

### ii.   Whether Defendant's Cessation Was in Response to the Lawsuit

As to the second factor, the Eleventh Circuit has noted that "[courts] are more likely to find that cessation moots a case when cessation is motivated by a defendant's genuine change of heart rather than his desire to avoid liability." Sheely, 505 F.3d at

1,186. Here, the record shows that the defendant implemented ADA-related structural changes to its facility in response to the lawsuit and the reports from the plaintiff's experts. The defendant's structural changes to its facility came after the plaintiff filed suit, after the jury trial on the negligence count and some of the changes were made after the plaintiff produced the third report by an expert.

The plaintiff argues that the defendant's cessation was motivated by the instant action. See Response at 12. The plaintiff notes that "Defendant throughout the litigation denied the presence of ADA violations and failed to remedy the barriers or address the discriminatory policies up and until a jury came back with a verdict on the Negligence Count." Id.

The defendant does not address this factor because it maintains that the Sheely factors are not applicable. Nonetheless, the defendant states that "Cleveland Clinic, upon receiving Plaintiff's February 26, 2018 Expert Report, which was far more extensive than their prior expert reports from [the plaintiff's first expert], remedied the alleged violations in the report or otherwise removed the . . . designation [that] the restroom as accessible which is permitted under the ADA." Reply at 6-7.

The Court finds that it can be inferred from the record that the defendant made changes to its property in response to the lawsuit. The undersigned notes that the plaintiff filed the instant action on August 18, 2016. The plaintiff's experts inspected the defendant's facility on four separate occasions: January 30, 2017, October 5, 2017, October 30, 2017, February 26, 2018 and May 3, 2018. Motion at 2. The Court notes that the plaintiff's second expert, Mr. Herrera, found additional violations which were not included in the plaintiff's first expert's reports. Nonetheless, on each visit, the plaintiff's

experts found ADA violations and some of the violations were still present when Mr. Herrera inspected the defendant's facility. Moreover, this is not a case where the defendant quickly remedied the alleged violations upon receiving notice from the plaintiff. See, e.g., Kennedy v. Omegagas & Oil, LLC, No. 18-10302, 2018 WL 4183462, at *4 (11th Cir. Aug. 31, 2018) (finding that the second factor weighed in favor of the defendant where the defendant "immediately began correcting any barriers or noncompliant features of its Property upon service of Plaintiff's complaint" and "instituted new policies and procedures for its employees and tenants to follow regarding the monitoring of the handicap parking space and the proper storage of equipment to ensure movable barriers, such as the mop bucket or furniture, [did] not preclude access to or navigation around the Property."); Houston v. 7-Eleven, Inc., No. 13-60004-CIV, 2014 WL 351970, at *3 (S.D. Fla. Jan. 31, 2014) (finding that defendant's actions were "motivated by a genuine desire to conscientiously comply with the ADA's architectural requirements" in part because "[the defendant] acted without delay to bring the [store] into full compliance with the ADA"). Accordingly, the Court concludes that the defendant's actions in making changes to the facility were in response to the instant action. The second factor weighs against a finding of mootness. See Houston, 2013 WL 12304550, at *3 (stating that "the fact that the remedial actions taken by Defendant came about as a direct result of Plaintiff's filing suit demonstrates that the Defendant fails to meet the second Sheely factor").

### iii.    Whether the Defendant Has Acknowledged Liability

As to the last factor, the Eleventh Circuit has stated that "a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a

desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." Sheely, 505 F.3d at 1187. The plaintiff notes that "Defendant's position in this matter has been for years . . . that there were no violations of the ADA." Response at 14. Some courts have found an admission of liability where a defendant makes structural changes to the property. See Windsor Investments, DE# 76 at 12, Case No. 13-cv-20285-JAL (S.D. Fla. Sept. 29, 2014) (finding that the third factor was met because "Defendant ha[d] essentially acknowledged liability by correcting . . . [the] violations based on [its expert]'s recommendation.") (emphasis added). Applying this reasoning, the Court finds that with respect to the structural changes made by the defendant to its facility, this factor weighs in favor of defendant.

However, with respect to the defendant's practice of placing trash bins and linen bins which encroach on the clear floor space in accessible restrooms, this factor weighs against the defendant and against a finding of mootness. The Court notes that even in the instant Motion, the defendant continues to maintain that "the presence of the movable trash can cannot serve as a basis for the ADA claim." Motion at 7. The Court discerns that a defendant who insists it has not violated the law is more likely to return to the challenged conduct once a lawsuit is dismissed. This is particularly true where, as here, the defendant has not presented the Court with any evidence of a formal change in policy, procedure or training with respect to the use of trash bin and linen bins. There is nothing in this record which would assure the Court that the defendant would not simply return to encroaching the clear floor space in accessible restrooms with trash bins and linen bins — conduct which the defendant insists is not prohibited by the ADA — if the plaintiff's ADA claim as to the bins is dismissed. This is of concern in

22

the instant case where the record suggests that the defendant has had a long standing practice of using trash bins and linen bins which encroach on clear floor space of accessible restrooms. See Response at 11.

In Crandall v. Starbucks Corp., the district court found that a defendant had not met its burden of establishing that a plaintiff's claim with respect to "access to the cashier counter" was moot even though the defendant had removed the obstructions to the counter. 249 F. Supp. 3d 1087, 1110 (N.D. Cal. 2017) (on cross-motions for summary judgment). The court found that the defendant had not met its "'heavy burden of persuading the Court' that the obstructions would not return in the future because "[t]here [was] no evidence that [the defendant] ha[d] ever had or ha[d] since adopted a particular policy governing placement of merchandise displays" and "[the defendant] ha[d] not proven that the display [would] not be returned to the middle of the store or other areas where it might block Plaintiff's access to the cashier's counter." Id. (citing Laidlaw, 528 U.S. at 189). Similarly here, although the defendant states in its Motion that it has removed the trash bin and linen bins from all accessible restrooms, the Court remains unpersuaded that the bins would not return to the accessible restrooms in the future.

The Court finds that with respect to the structural changes made by the defendant at its facility, the plaintiff's ADA claim is moot. "Even beyond the three Sheely factors, the ultimate standard for mootness based on voluntary cessation is met . . . because the alleged violation cannot reasonably be expected to recur." Thomas v. Branch Banking & Tr. Co., 32 F. Supp. 3d 1266, 1270 (N.D. Ga. 2014) (citing Laidlaw, 528 U.S. at 189). The plaintiff does not dispute that the defendant made structural

changes to its facility. Rather, the plaintiff takes issue with the quality of the evidence[6] submitted by the defendant in support of its assertion that all purported ADA violations have been remedied at its facility. Tellingly, the plaintiff does not offer to conduct another inspection of the defendant's facility and have his expert take measurements to confirm ADA compliance or otherwise dispute that the defendant has made physical changes to the accessible restrooms[7] bringing them into compliance with the ADA.

The Eleventh Circuit has noted that when a business makes structural changes to a facility in order to come into compliance with the ADA, it is unlikely that the business will incur additional expenses in order to undo those changes it made. See

_____

[6] See Response at 8 (noting that the defendant "now resort[s] to attaching unauthenticated photographs as exhibits" and that "neither Defendant nor its counsel are 'expert[s] on ADA-compliance, and [their] photographs of the facility . . . do not definitively demonstrate that the facility is actually ADA-compliant.'") (quoting Longhini v. W. 97 Corp., 1:15-CV-22874-UU, 2015 WL 12859720, at *3 (S.D. Fla. Nov. 20, 2015)); Response at 12 (stating that "Defendant, in their Motion, seem to again conveniently provide an unwritten and unconfirmed change of policy indicating that . . . these trash bins have been removed from these restrooms. However, Plaintiff and this court is left to guess whether this is a temporary change simply as part of an attempt to moot out the case."); id. at 16 (stating that "an unsworn statement in a motion [by defendant's counsel about removing the trash bins] cannot be sufficient to moot violations that have existed for years and have been found to be present during all five (5) inspections by Plaintiff.").

[7] The plaintiff also notes that rather than correct the ADA violations in some of the restrooms, the defendant chose to remove the accessibility designation from these restrooms. See Response at 7 (stating that "Defendant did not correct all the barriers identified in each restroom. Rather [the defendant] chose to simply eliminate the accessibility designations from three (3) of the eight (8) previously inspected restrooms and physically cut out the accessibility indication from the signage of these restrooms."). However, the plaintiff does not dispute that the defendant's decision to change the designation of accessible restrooms was permitted under the law. See Motion at 4 (stating that "'[w]here multiple single user toilet rooms are clustered at a single location, no more than 50 percent of the single user toilet rooms for each use at each cluster shall be required' to be accessible.") (quoting 2010 ADA Standards § 213.2(4)).

<u>Kennedy v. Omegagas & Oil, LLC</u>, No. 18-10302, 2018 WL 4183462, at *4 (11th Cir. Aug. 31, 2018) ("not[ing] it would be an unorthodox business practice to spend thousands of dollars on purchasing and installing new fixtures . . . simply to rip them out and replace them with new, noncompliant fixtures."). Similarly here, the defendant has relocated or installed new lavatories, lowered a mirror, reinstalled a rear wall grab bar, installed pull handles and made other physical modifications to its facility. <u>See</u> Motion at 5-8. The Court finds that because the defendant has made structural changes to its accessible restrooms, the ADA violations remedied by those structural changes are not reasonably expected to recur. "The essential question that must be answered under the voluntary-cessation doctrine is simple: Is it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Houston v. 7-Eleven, Inc.</u>, No. 13-60004-CIV, 2014 WL 351970, at *4 (S.D. Fla. Jan. 31, 2014). For the reasons stated above, the Court finds it is "absolutely clear" that at least with respect to the barriers addressed by the defendant's <u>structural changes</u> to the facility, the allegedly wrongful conduct has been corrected and is not reasonably expected to recur. <u>Sheely</u>, 505 F.3d at 1183-84. Accordingly, with respect to those barriers, the plaintiff's ADA claim is moot.

Unlike the physical changes made to the accessible restrooms at the defendant's facility, the Court cannot conclude, based on this record, that it is "absolutely clear" that the trash bin and linen bins will not return to the accessible restrooms. The record in this case establishes or, at the very least, suggests that the defendant had a practice or policy of maintaining trash bins and linen bins in the accessible restrooms. <u>See, e.g</u>, Affidavit of Luz A. Warford (DE# 128-2 at ¶7,12/8/17) (attesting as follows "When I was assigned to clean the bathroom depicted in Exhibit 'B'

25

attached hereto, part of my responsibilities included ensuring that the plastic trash bin was positioned under the paper towel dispenser and at the door entrance to the right is the red basket, right away is the blue basket. Exhibit 'B' accurately depicts the position where this plastic trash bin was normally located."). The defendant has not provided the Court with any assurances[8] that this practice or policy would not return if the case were dismissed, particularly since the defendant has consistently maintained that moveable objects such as trash bins and linen bins are not subject to the ADA. See, e.g. Defendant's Motion for Partial Summary Judgment (DE# 80 at 9-10, 10/27/17) (arguing that "[e]asily movable barriers, such as the receptacles described by the Plaintiff, are not within the ambit of Title III of the ADA because they 'are not an item susceptible of an enforceable injunction.'") (quoting Key Largo Bay Beach, 407 F. Supp. 2d at 1346).

In sum, when weighed together, the Sheely factors indicate that with respect to barriers addressed by the structural changes made to the defendant's facility, the plaintiff's ADA claim is moot. The Court is convinced that it is "absolutely clear" that the defendant would not undo the structural changes to its facility if those claims were dismissed. Laidlaw, 528 U.S. at 189. However, the plaintiff's ADA claim is not moot with respect to the defendant's use of trash bins and linen bins which allegedly

_____

[8] The Court notes that in Sheely, the defendant filed an affidavit from its Vice President of Finance and Business Administration concerning the implementation of a policy permitting service animal access, nonetheless, the Eleventh Circuit found that "[the defendant] ha[d] not met its 'formidable,' 'heavy burden' of meeting the Supreme Court's 'stringent' standard for mootness in a private voluntary cessation case—showing that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Sheely, 505 F.3d at 1189 (quoting Laidlaw, 528 U.S. at 189). Here, the defendant has provided no evidentiary support demonstrating that the trash bins and linen bins would not return to the accessible restrooms.

encroach on the clear floor space of accessible restrooms. The Court finds that the defendant has provided no assurances (in fact, the defendant has not so much as filed an affidavit acknowledging a change in policy) that the trash bins and linen bins would not return to the accessible restrooms if the Court were to dismiss that portion of the plaintiff's ADA claim.

**2.      Plaintiff's Request for a Judgment in His Favor**

The plaintiff asserts that he "has and will continue to demonstrate that he has satisfied every element of a claim for injunctive relief under the ADA." Response at 8. As such, the "Plaintiff requests that a Judgment be entered in his favor and that the Court award him his reasonable attorney's fees, and litigation expenses, including expert fees and costs." Id. at 24. In essence, the plaintiff asks for summary judgment on his ADA claim as it pertains to the defendant's policy, practice and/or procedure of using accessible restrooms as changing rooms and its placement of the trash bin in a location that interferes with the minimum wheelchair clear floor space.

The Court finds it would be procedurally improper to grant summary judgment to the plaintiff based on an argument raised in response to a motion on attorney's fees. Rule 56 of the Federal Rules of Civil Procedure provides that the Court must give the parties notice and a reasonable time to respond. Fed. R. Civ. P. 56(f). Additionally, the plaintiff has not provided the Court with any analysis on why he has met the summary judgment standard or a statement of undisputed facts. In Crandall, the Court refused to grant summary judgment for either party on whether a "'waste receptacle within the men's restroom obstruct[ed] the required maneuvering clearance at the interior of the door' in violation of the ADAAG requirement of a minimum clearance of 60 inches on

the inside 'pull side' of the door." Crandall v. Starbucks Corp., 249 F. Supp. 3d 1087, 1118 (N.D. Cal. 2017) (citing 2010 ADAAG § 404.2.4.1). The court noted that "[i]t [was] not clear whether the trashcan remain[ed] where it was pictured for the photograph, and the parties did not address or offer evidence about how frequently it is moved in a way that might block the entrance. Thus, a genuine dispute remain[ed] as to whether there is sufficient clear space in the bathroom." Id. Similarly here, the record has not been sufficiently presented for the Court to enter a judgment. As noted above, the parties have not addressed the movability of the trash bin and the linen bins. The plaintiff has not established that the trash bin and the linen bins are not easily moveable by the vast majority of wheelchair users. See Wilson v. Norbreck LLC, No. S-04-690 DFL JFM, 2006 WL 2651139, at *4 (E.D. Cal. Sept. 15, 2006). It is also possible that the defendant will rely on expert testimony that the trash bins and linen bins do not encroach on the accessible clear floor space now that the defendant has replaced the sink or moved the seat cover dispenser. See Rush, 2011 WL 13109296, at *5 (noting that with respect to the plaintiff's claim that the trash can obstructed the plaintiff's access to the toilet seat cover, the court ruled that the defendant had mooted that claim by removing the toilet seat cover dispenser). Additionally, the Court notes that the plaintiff's first expert, Mr. Norkunas, states that the "1991 Standards [are] applicable to defendant's facility built in the year 2001," see November 8, 2017 Expert Report (DE# 99-1 at 27), whereas the plaintiff's second expert, Mr. Herrera, only cites to the 2010 ADA Standards and the ADAAG. See Final Report (DE# 195-1). If there is a distinction between the two standards as they apply to the clear floor space requirement, the parties should have an opportunity to brief the issue.

For all of these reasons, the plaintiff's request for the entry of a judgment in his favor is **DENIED**.

### 3. Plaintiff's Request for Reconsideration of the Court's Order (DE# 190) Denying Plaintiff's Motion for New Trial

In the last paragraph of his Response, the plaintiff asks the Court to reconsider its prior Order (DE# 190) denying the plaintiff's motion for a new trial.[9] The plaintiff argues that reconsideration of the Court's prior ruling is warranted because the defendant denied any ADA violations at trial and "then immediately thereafter admitt[ed] that the ADA violation will be rectified." Response at 18. Along the same vein, the plaintiff filed a Notice of Supplemental Authority (DE# 205) on the doctrine of judicial estoppel.

For its part, the defendant maintains that the plaintiff's response "mischaracterizes Cleveland Clinic's argument [at trial]. Cleveland Clinic argued that the placement of the trash receptacles did not violate the ADA, and therefore Plaintiff's alleged injury was not caused by a purported ADA violation or any negligence of Cleveland Clinic." Reply at 1.

The plaintiff has not met his burden of showing that reconsideration of the Court's prior Order (DE# 190) is warranted. Reconsideration of a previous order is an extraordinary remedy to be employed sparingly. In re Martinez v. Law Offices of David Stern, P.A., 266 B.R. 523, 538 (S.D. Fla. 2001) (internal quotation omitted) (quoting

---

[9] The plaintiff sought a new trial because: (1) the Court allowed evidence of the plaintiff's prior falls occurring in 2014 and 2015 and (2) the defendant's ADA expert, Jeffery Gross, improperly rendered opinions interpreting ADA law. See Plaintiff's Motion for New Trial (DE# 173, 1/26/18).

SEC v. Seahawk Deep Ocean Technology, 74 F. Supp. 2d 1188, 1192 (M.D. Fla. 1999)). A motion for reconsideration must demonstrate why the Court should reconsider its prior decision and "'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" PaineWebber Income Properties Three Ltd. Partnership v. Mobil Oil Corp., 902 F. Supp. 1514, 1521 (M.D. Fla. 1995) (quoting Cover v. Wal-Mart Stores, Inc., 148 F.R.D. 294 (M.D. Fla. 1993)). Here, the plaintiff has not persuaded the Court that a new trial on his negligence claim is merited. Accordingly, the plaintiff's request for reconsideration is **DENIED**.

## CONCLUSION

In sum, the Court concludes that with respect to the barriers addressed by the defendant's structural changes to the facility, the plaintiff's ADA claim is moot. The plaintiff's ADA claim is not moot with respect to the use of trash bins and linen bins which purportedly encroach on the clear floor space of accessible restrooms. Accordingly, it is

ORDERED AND ADJUDGED that the Defendant's Motion Concerning Award of Attorneys' Fees (DE# 198, 6/6/18) is **GRANTED in part and DENIED in part**. The plaintiff's ADA claims remedied by structural changes to the defendant's facility are **DISMISSED as moot**. It is further

ORDERED AND ADJUDGED that this matter is set for a status hearing before the undersigned on **Friday, November 30, 2018 at 10:30 AM** at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, 5th Floor, Miami, Florida 33128. **The parties shall be prepared to discuss a date for the bench trial on the**

**remaining ADA claim**. Request for continuance of this cause shall not be considered unless addressed to this Court in the form of a written motion.

DONE AND ORDERED in Chambers at Miami, Florida this 29 day of October, 2018.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE