UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:16-cv-61994-O'SULLIVAN

GARY KAHN,

    Plaintiff,

v.

CLEVELAND CLINIC FLORIDA HEALTH SYSTEM
NONPROFIT CORPORATION, d/b/a CLEVELAND
CLINIC HOSPITAL,

    Defendant.
_____/

## DEFENDANT CLEVELAND CLINIC FLORIDA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Cleveland Clinic Florida Health System Nonprofit Corporation, d/b/a Cleveland Clinic Hospital ("Defendant" or CCH"), submits its Proposed Findings of Fact and Conclusions of Law pursuant to the Court's Order of January 28, 2019 (D.E. 234). The sole issues before the Court, as defined in the Court's Order of October 29, 2018 (D.E. 207), are whether the placement of trash bins and linen bins in the subject handicap bathrooms at CCH's premises constituted a policy and procedure in violation of the ADA, whether Plaintiff should be entitled to any relief based on the facts of this case, and whether Plaintiff's claims on this issue are moot.[1]

**I.     [PROPOSED] FINDINGS OF FACT**

    1.    The genesis of the ADA part of this lawsuit concerns bins in Restroom No. WHN1-231 (sometimes, the Subject Restroom" or "Room 231"), which is designated as a handicap accessible restroom. In the Initial Complaint (D.E.1), at ¶ 43, Plaintiff alleged that (a)

---

[1] The references to the bench trial transcript are identified by 'T.___:"

there was inadequate clear turning space, and (b) CCH used the bathroom as a storage area for holding soiled linen, which made it difficult for Plaintiff to safely utilize the restroom facilities. The same allegation was made in the Amended Complaint (D.E.14) and the Second Amended Complaint (D.E. 42).

**The trash can**

2. Plaintiff claimed that there were three bins in Room 231: a hamper with a blue bag, a hamper with a red bag, and a trash bin up against the sink (D.E. 1 at ¶18); (T. 50:3-18), as depicted in a drawing by his assistant, Laurie Denis.[2] (D.E. 99-1 Exh. B at 38).

3. Plaintiff's first ADA expert, William Norkunas, did an inspection of CCH on January 30, 2017, and issued a report on February 25, 2017 (D.E. 99-1 Exh. A). The Report did not mention any violations in the Subject Restroom with respect to inadequate clear turning space. The Report mentioned other items such as a hook on the back door being too high, relocating the paper seat cover dispenser from behind the toilet, modifying the emergency pull cord, and chairs interfering with access to one of the accessible restrooms in the Radiology Department. The only mention of bins was on page 18, where Mr. Norkunas made the blanket statement that a handicap restroom should not be used for soiled linen storage because it interferes with the clear maneuvering space wheelchair users need. He did not measure or identify the restroom in the picture on page 18.

4. On October 5, 2017 and October 30, 2017, Mr. Norkunas made two additional visits to CCH, and on November 8, 2017 issued a supplemental report. (D.E. 99-1 Exh. B). In the supplemental report, he noted the seat cover dispenser had been moved in the Subject Restroom, mentioned the post on the toilet, and the door opening force on one door.

---

[2] Laurie Denis has been variously referred to as Plaintiff's aide, assistant, fiancé, and wife. For purposes of this order, the Court will refer her as Plaintiff's assistant.

5. The only reference to the trash bin is on pages 15-17 of his report, where Mr. Norkunas represented that the photo on page 16 of his Report reflected the conditions existing within the Subject Restroom when Plaintiff sustained his injuries, and he stated that there was not sufficient clear space for a front approach to the sink. (D.E. 99-1 Exh. B). But it is clear that Mr. Norkunas' representation is based solely upon a rough drawing by Plaintiff's assistant (*Id.* at 40), and a photograph by undersigned counsel in which the trash bin was deliberately placed next to the sink by undersigned counsel.[3] He did not take any measurements of the restroom. He did not take any measurements of clear turning space as alleged in the Complaint, either in his reports or at trial.

6. Regarding the placement of the trash bin in the Subject Restroom, all witnesses testified that it was always put on the back wall in the far corner. (E.g., T. 173:14-174:15; T. 177:19-178:8; T. 186:1-12; T. 206:23-208:10, 219:22-220:5). The only people who claimed that the trash bin was up against the sink on the day of the incident were (a) Plaintiff and his assistant; and (b) a former maintenance worker, Luz Warford.

7. Plaintiff however changed his story numerous times as to where the bins where, whether they contributed to his fall. (T. 70:25-71:9) (D.E. 1 at ¶¶ 18-21). At trial, he also claimed, for the first time, that his assistant had fallen in the bathroom too, even though neither he nor she never mentioned this alleged fact in his pleadings or at deposition. (T.69:6-70:13).

8. With respect to Luz Warford, a former maintenance worker, she signed an affidavit that she would always place the trash bin up against the wall near the sink in the Subject Restroom. (T. 152:10-153:19; D.E. 113). But she admitted that she signed an affidavit for Plaintiff, which supported Plaintiff's testimony, to that effect that she was told by Plaintiff's

---

[3] At page 13 of the Report (D.E. 99-1 at 36), Mr. Norkunas references a trash bin and soiled linen in an unidentified restroom. If this is the Subject Restroom, Mr. Norkunas conceded that there was sufficient clear turning radius space.

representative that if she signed the affidavit she would not have to appear in court. (T. 156:20-157:5). She also testified that she was let go from CCH because she was such a good worker that everyone else was made to look bad in comparison, and that CCH fired the good employees and kept those who were not as good. (T. 158:9-159:11). She even testified that the CEO of CCH wanted to keep her, but she was let go anyway. (T. 159:13-16).

9. At trial, Mr. Norkunas agreed that the red templates that Defendant's expert, Jeffrey Gross, had placed on the floor in the Subject Restroom demonstrated adequate clear turning radius in that restroom, even if the bins were placed as claimed by Plaintiff. (T. 145:16-147:18; Jury Trial Exh. 147).

10. Regarding the red bin, Plaintiff and his assistant were the only ones who testified that there was a red hamper with a red bag in Room 231. (T. 64:11-65:9). No one else, not even Luz Warford, ever saw a red bag *or* a red bin in that room. (T. 157:15-18; T. 189:2-13; T. 208:8-10, 213:20-22). In fact, no one has ever seen a hamper with a red bag anywhere. (E.g., T. 154:2-6; 182:19-183:4; T. 188:6-20). It was testified that if the red bin were placed in the bathroom, it would basically block access. (T. 179:24-180:7). The only time a red bin might be in a bathroom would be when a patient would be brought into the restroom with the red bin, as explained by Natalie Haafd. (T. 213:23-214:21)

11. Based on the foregoing, the Court finds that Plaintiff, his assistant, and Luz Warford are not credible witnesses. The Court therefore finds that there never was a red bag or bin in Room 231, and that the trash bin in the Subject Restroom was not up against the sink on July 10, 2015, as claimed by Plaintiff, or thereafter.

12. There is no evidence that anyone ever complained in radiology of any handicap person every really having difficulty using any of the handicap bathrooms. (T.209:23-210:5).

**Jury Trial**

13. On January 8 through 11, 2018, this case was tried before a jury on Count I, Negligence. The jury rendered a verdict in favor of Defendant. At that point, Plaintiff had not demonstrated that Defendant had committed any violation of the ADA with respect to the trash bin or linen bin in the Subject Restroom.

**Carlos Herrera**

14. After the jury trial, Plaintiff hired a new ADA expert, Carlos Herrera. He conducted an inspection of the premises on February 26, 2018. The report was sent to CCH's counsel on March 7, 2018, and was filed on April 2, 2018. (D.E. 194).

15. Mr. Herrera's Report contained 57 individual items that Mr. Herrera claimed needed to be remedied. Virtually none of the items had been listed previously by Mr. Norkunas, and certainly none of the bin issues had been asserted earlier. Mr. Herrera did not even rely on any photographs by Mr. Norkunas. (T. 77:9-12).

16. Regarding the bins, Plaintiff now claimed that in some handicap restrooms a trash bin was not far enough away from the pull side of the latch. This the first time that issue was raised by anyone. (T. 241:12-22).

17. The Court finds that for all practical purposes, a new case began on March 7, 2018, when CCH was presented with a whole new set of asserted ADA violations. The Court directed the parties to schedule a mediation. (D.E. 178).

18. When the mediation was not successful, the Court issued an Order on April 3, 2018 stating, among other things, that by May 3, 2018, the Defendant shall file a notice with the Court indicating that it has completed any changes to the property; that by May 18, 2018 the plaintiff shall re-inspect the property, and within one week shall filed a notice with the court

concerning the re-inspection. The Court then set a schedule for briefing on Defendant's Motion for Attorneys' Fees. (D.E. 192). Defendant therefore had only approximately 30 days to address the 57 new items raised in Mr. Herrera's report. The Court takes notice that typically in ADA Title III cases the Defendant is provided many months to effect modifications after the expert report is issued.

19. On May 3, 2018, Defendant filed with the Court a report that to the best of Defendant's knowledge and belief, Defendant had completed the modifications requested in Plaintiff's February 26, 2018 expert report. (D.E. 194). On May 11, 2018, Plaintiff filed a Notice of Filing Post Compliance Expert Report. (D.E. 195).

20. In that Notice, Plaintiff represented: "Notwithstanding the report, following Plaintiff's Fourth Inspection of the Facility, Plaintiff represents to the Court that Defendant's facility is now in substantial compliance of the ADA." Mr. Herrera did not conduct any inspection of CCH after May 3, 2018. (T. 110:14-19).

21. The parties thereupon briefed the issue of Defendant's entitlement to attorneys' fees. On October 29, 2018, the Court issued its Order granting in part and denying in part Defendant's Motion Concerning Award of Attorneys' Fees. (D.E. 207).

22. In summary, the Court found that "with respect to barriers addressed by the structural changes made to the defendant's facility, the plaintiff's ADA claim is moot. However, the plaintiff's claim is not moot with respect to the defendant's use of trash bins and linen bins which allegedly encroach on the clear floor space of accessible restrooms." *(Id.* at pp. 25-26).

23. On January 28, 2019, the Court conducted a one-day bench trial on the sole remaining issue of whether CCH had a policy and procedure with respect to the placement of

trash bins and linen bins in handicap bathrooms that violated the ADA, and whether those claims were moot or justified any relief.

24. After ruling on certain objections, all accepted exhibits were introduced into evidence.

25. Plaintiff put on one live witness, Carlos Herrera, played a videotape of a new deposition of Plaintiff, Gary Kahn, and read from the depositions of Natalie Haaf, Mercedes Varela, Lee Ghezzi, Kerry Ninkovich, Luz Warford, and William Norkunas.

26. Defendant put on Natalie Haaf, its ADA expert witness Jeffrey Gross, and also read from or designated portions of those depositions.

27. Ms. Haaf testified that the linen bins had been removed from all the handicap bathrooms, that a new changing room had been built in the Radiology Department, and that patients change in the examination rooms. She stated that those protocols have been discussed with all relevant staff, and are reinforced through weekly meetings. (T. 211:1-13; 213:1-18; 230:6-23). When the new construction is completed, there will be a row of changing rooms that will obviate any necessity for patients to change in a restroom. She explained Bench Trial Exhibit 157, which depicted the present layout of the radiology department and the new changing rooms being built. Defendant had re-designated certain restrooms as not being handicap accessible, and other restrooms were found to be in compliance by Mr. Herrera. (T. 110:6-13). She stated that there was no need now or in the future for the placement of linen bins in handicap restrooms. (T. 217:6-10).

28. After eliminating the restrooms that were compliant or which had been re-designated as not handicap accessible, the issues to be determined by the Court narrowed down

to the placement of three waste bins identified in Mr. Herrera's First Report and again reviewed in his Second Report, namely: Room 205A, Room 2-202 and Hallway Room 2508.

    a.    **Item 6** (Room **205A**, Photo 27).[4]  The issue was that the trash bin was encroaching on the clear space under the paper towel dispenser.  The requested modification by Mr. Herrera was in fact made, and the status of the item was labeled by Mr. Herrera as "Complete".  As seen in Item 12 however (Room 205A) (Photo 40), the trash bin was relocated, as per Item 6, but to a space that created a new, different clear floor space issue.

    b.    **Item 27** (Room **2-202**).  The issue was that the trash bin was located under the baby changing station.  The baby changing station was removed, and the status of the item was labeled by Mr. Herrera as "Complete." As seen in Item 27 (Room 2-202). (Photo 45), after the baby changing station was removed, a seat cover dispenser was placed in that location.  This however created a new, different issue of the trash bin being placed under the relocated seat cover dispenser.

    c.    **Item 57** (**Main Lobby Room 2508**) (Photos 98 and 99). The issue was that trash bin was not sufficiently far away from the required clearance on the pull side of the door. Although the trash can did not interfere with the opening or closing of the door, the trash can was only 39" from the pull side of the door.

29.    By order of January 28, 2019, the Court ordered the parties to submit proposed findings of fact and conclusions of law. (D.E. 234).

---

[4] The Item number refers to the numbering system in Mr. Herrera's Second Report., and the photo numbers refer to the numbered photos attached to the report.

## II.  [PROPOSED] CONCLUSIONS OF LAW

1. The sole issue before the Court is whether the placement of trash bins and linen bins in the subject areas at CCH constitutes a policy and procedure in violation of the ADA, and whether given Defendants' actions it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur such as to render Plaintiff's claim moot. *Houston v. 7-Eleven, Inc.*, No. 13-60004, 2014 WL 351970, at *4 (S.D. Fla. Jan. 31, 2014).

2. Plaintiff has tried to promote a narrative that Defendant simply ignored Plaintiff's demands over two years to remediate alleged ADA violations regarding the trash bins and linen bins. But the time line of events, as set forth in the Findings of Fact above, demonstrate that Plaintiff's narrative is neither accurate, nor a fair representation of the sequence of events.

3. Plaintiff has also argued that using a restroom for a changing room violates the ADA, and that soiled linen was "stored" in those bathrooms. First, there is no law to that effect. (T. 263:1-11). Second, it is inaccurate to say that soiled linen was "stored" in the restroom; based on that verbiage, it could be said that every restroom "stored" discarded paper towels.

**The Linen Bins**

4. The linen bin originally at issue was the one in Room 231. Plaintiff stated in his Complaint and two amended complaints that the alleged "three bins" impeded his clear path and caused him to fall. At deposition and at trial, he admitted however that he did have had a clear path to the toilet, and that the bins did not interfere with his access to the toilet. (T. 61:1-6). Mr. Norkunas never raised the linen bin being an obstruction in Room 231. He never made any mention of the linen bin intruding in any required clear floor space. Mr. Herrera's Second Report does not list any linen bin as being an obstruction in a handicap bathroom. Based on the

testimony and reports of Plaintiff's two experts, the linen bins did not create any ADA compliance issue, to the extent they ever did.

5. In any event, CCH has removed all the linen bins from the handicap bathrooms. (T.210:10-25). It has constructed a changing room in radiology, and other patients change in the exam rooms. This has been communicated to all supervisors and staff. And CCH is constructing a row of changing rooms in the extension now being completed.

6. Even, Plaintiff's counsel admitted that when he went back the second time with Mr. Herrera, there were no linen bins in the handicap bathrooms. (278:4-18).

7. The Court finds that to whatever extent there was any linen bin issue to begin with, there is no more need for the linen bins. Plaintiff has argued that there is nothing to stop CCH from putting the linen bins back in the handicap restrooms in the future. But given the changing room constructed in Radiology and the line of changing rooms now being built, there is no reasonable basis to conclude or speculate that Defendant might even do so. Therefore, the Court finds that it is absolutely clear that the alleged wrongful behavior regarding linen bins and the ADA [to the extent that there ever was any wrongful behavior] could not reasonably be expected to recur, and that Plaintiff's claim with respect to linen bins has been rendered moot. *See Kennedy v. Omegagas & Oil LLC*, No. 9:17-cv-80103, 2018 WL 310051, at *8 (S.D. Fla. Jan. 3, 2018); *Houston,* 2014 WL 351970, at *4.

**The Trash Bins.**

8. The main issue with respect to the trash bins began with Plaintiff's assertion that a trash bin was up against the sink in Room 231 and became stuck in the back wheels of his wheelchair. Plaintiff first asserted this new version of the facts over a year after the original

Complaint had been filed and contradicted the allegations of the Complaint. Plaintiff argued at the jury trial that this alleged ADA violation was the cause of his injury.

9. Plaintiff has continually attacked Defendant for not "fixing" the alleged ADA violation with respect to the trash bin. But there was nothing to fix. In its Findings of Facts above, the Court has found that the trash bin in Room 231 was not up against the sink on the date of the incident, or before or after.

10. Plaintiff never used any of the other handicap bathrooms in Radiology or in the facility. Nonetheless, CCF allowed Plaintiff's experts to inspect those bathrooms.

11. Plaintiff has argued that Defendant had two years to correct ADA violations with respect to the "bins". That is not accurate. Defendant did correct ADA violations pointed out by Mr. Norkunas. But as matters stood after the jury trial, and based upon the expert testimony, Room 231 was and had been ADA compliant with respect to the trash bin, and there was no other issue presented by Plaintiff.

12. It was only on March 3, 2018, that Plaintiff's new expert, Mr. Herrera, raised for the first time the issue of certain trash bins not meeting the required distance from the latch side of the door, and that certain trash bins in a couple of handicap restrooms were placed under a seat cover dispenser or a towel dispenser, which was not the issue with respect to the Subject Restroom. No one had raised the door clearance issue before Mr. Herrera did in his February 26, 2018 Report. (T.111:18-112:13).

13. Defendant had approximately 30 days to correct the 57 items raised by Mr. Herrera. Given that various bathrooms were re-designated as non-handicap accessible, and other restrooms were certified as complete by Mr. Herrera, at the time of the Second Report, there was only the placement of three trash cans at issue. With respect to two of those rooms – Room

205A and Room 2-202, Defendant did in fact make the correction that Mr. Herrera had recommended. That correction however created a new issue, which Defendant has conclusively addressed by reconfiguring those bathrooms with built-in trash disposal units (*see* Cleveland Clinic's Motion to Dismiss filed concurrently), so that they fall within the category of structural changes that have been already declared moot by the Court.

15.  With respect to the hallway bathroom, Room 2058, an extra trash bin was not removed from near the door as directed. The trash bin did not block the door from opening, but just was not the required distance from the door jamb. This has been corrected by a large sign, in Spanish and English, fastened on the wall that trash cans are not to be placed in that space. *See* Cleveland Clinic's Motion to Dismiss filed concurrently.

16.  At the trial, the Court commented that between Mr. Herrera's First Report and Second Report, Defendant had only fixed two out of five handicap restrooms. Having again reviewed the expert reports and time line of events, the Court concludes that the more appropriate analysis is that Defendant was put in a position of having to address 57 new issues in 30 days, not just the placement of bins in three bathrooms, and that Defendant's efforts to comply with the items listed in Mr. Herrera's Second Report led Plaintiff to conclude that "Defendant's facility is now in substantial compliance with the ADA."

17.  The Court therefore finds that Defendant having made the structural changes described above, it is absolutely clear that the alleged wrongful behavior regarding trash bins and the ADA could not reasonably be expected to recur, and that Plaintiff's claim with respect to linen bins has been rendered moot. For these reasons, among others, there is no basis upon which Plaintiff could justify an injunction as urged upon this Court by Plaintiff.

**Moveable Objects**.

18. Defendant has asserted that trash bins and linen bins are moveable objects not covered by the ADA. (See D.E. 198). Given the above findings, the Court need not reach that issue. But for sake of completeness, the Court did discuss this issue in its October 29, 2018 Order.

19. The trash bin used in the Subject Restroom was a moveable object. Plaintiff's own expert, Carlos Herrera, confirmed that the wastebaskets he saw were moveable and could be pushed with your foot, or pushed or grabbed with your hands. (T.111:10-17). Natalie Haaf agreed. (T.210:7-9). Because the trash bin in the Subject Restroom is a movable object, as acknowledged by Plaintiff's expert, it is not covered by the ADA. *See Assoc. for Disabled Americans, Inc. v. Key Largo Bay Beach, LLC,* 407 F. Supp. 2d 1321, 1348 (S.D. Fla. 2005); *National Alliance for Accessibility, Inc., v. Windsor Investments* (3600 S.W. 22nd) LLC, No. 13-30385 [ECF No. 76] (dismissing plaintiff's ADA claim for lack of subject matter jurisdiction, denying request for attorney's fees and finding the placement of the trash can in the women's restroom does not constitute a barrier under the ADA); *Wilson v. Norbeck LLC*, No. Civ.S-04-690 DFL JFM, 2006 WL 2651139, at *4 (E.D. Cal. Sept. 15, 2006); *Rush v. Castle & Cooke Corona Inc.*, No. CV 10-8952-GW(PLAX), 2011 WL 13109296, at *8 (C.D. Cal. Nov 10, 2011).

20. There is no evidence that the linen bins were moved anywhere. And they have been removed from all the handicap restrooms.

21. Based on the foregoing findings of fact and conclusions of law, the Court finds that judgement should be issued in favor of Defendant on Count II of Plaintiff's Second Amended Complaint, for which a separate Final Judgment shall be issued.

CASE NO. 0:16-cv-61994-O'SULLIVAN

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorney for Defendant*
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0519
Facsimile:  (305) 579-0717

By:     /s/ Ronald M. Rosengarten
RONALD M. ROSENGARTEN
Florida Bar No. 387540
rosengartenr@gtlaw.com
ROBERT S. GALBO
Florida Bar No. 106937
galbor@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2019 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

             /s/ Ronald M. Rosengarten
RONALD M. ROSENGARTEN

CASE NO. 0:16-cv-61994-O'SULLIVAN

## SERVICE LIST

*Gary Kahn v. Cleveland Clinic Florida Health System Nonprofit Corporation d/b/a Cleveland Clinic Hospital*
**Case No.: 0:16-cv-61994-O'SULLIVAN**
**United States District Court, Southern District of Florida**

Gary E. Susser, Esq.
Gregory Steven Sconzo, Esq.
LAW OFFICE OF GARY E. SUSSER, P.A
2755 S. Federal Highway, Suite 13
Boynton Beach, Florida 33435
Primary: gary@susserlaw.com
           sconzolaw@gmail.com
Secondary: lydia@susserlaw.com
Service: courtdocs@susserlaw.com

*Counsel for Plaintiff*