UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-61994-CIV-O'SULLIVAN

[CONSENT]

GARY KAHN,

        Plaintiff,

v.

CLEVELAND CLINIC FLORIDA
HOSPITAL,

        Defendant.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

THIS MATTER comes before the Court following a bench trial held on January 28, 2019. The parties consented to trial before a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (DE# 30, 2/1/17). This matter was referred to the undersigned by the Honorable Federico A. Moreno in accordance with 28 U.S.C. § 636(b). See Order of Reassignment to Magistrate Judge O'Sullivan (DE# 31, 2/8/17). The Court has carefully reviewed the testimony and exhibits presented at the bench trial and makes the following findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

---

[1] The parties submitted proposed findings of fact and conclusions of law. See Plaintiff's Proposed Findings of Fact and Conclusions of Law (DE# 245, 3/4/19); Defendant Cleveland Clinic Florida's Proposed Findings of Fact and Conclusions of Law (DE# 246, 3/4/19). Any proposed finding of fact or conclusion of law omitted from this Order has either been rejected by the Court or is unnecessary to the disposition of this matter.

## I.    FINDINGS OF FACT[2]

### A.    Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves a claim under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (hereinafter "ADA").

### B.    Parties

GARY KAHN (hereinafter "plaintiff") has multiple sclerosis, a qualifying disability under the ADA. He requires the use of a motorized wheelchair.

CLEVELAND CLINIC FLORIDA HEALTH SYSTEM NONPROFIT CORPORATION (hereinafter "defendant") is a non-profit Florida corporation. The defendant is the owner/operator of CLEVELAND CLINIC FLORIDA-WESTON (hereinafter "CLEVELAND CLINIC"), a medical building and related medical facilities in Weston, Florida. CLEVELAND CLINIC, except for areas not accessible to the public, is a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(F).

### C.    Procedural Background

#### 1.    Complaint and Amended Complaint

On August 18, 2016, the plaintiff filed the instant action against the defendant alleging a negligence claim (Count I) and an ADA claim (Count II). See Complaint for Damages and Injunctive Relief (DE# 1, 8/18/16) (hereinafter "Complaint"). The Complaint alleged, in part, that:

> b.    **There was inadequate clear turning space** in violation of section 603.2.1 of the 2010 ADAAG regulations and in violation of section 4.17.3

---

[2] To the extent that any findings of fact constitute conclusions of law, they are adopted as such.

2

of the Uniform Federal Accessibility Standards. Defendant improperly used the handicapped accessible bathroom as a storage area for receptacles holding soiled linen. This made it difficult for Plaintiff to safely utilize the restroom facilities.

***

e.    **Restrooms in the Facility have lavatories with inadequate knee and toe clearance** in violation of section 306 of the 2010 ADAAG regulations and in violation of section 4.19.2 of the Uniform Federal Accessibility Standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

Id. at ¶ 47(b), (e) (emphasis added).

On March 28, 2017, the plaintiff filed Plaintiff's Second Amended Complaint for Damages and Injunctive Relief (DE# 44, 3/28/17) (hereinafter "Amended Complaint"). The Amended Complaint alleged, in part, that:

53. **The Defendant did not have adequate policies, practices and/or procedures in place to prevent harm to people with disabilities,** and in fact had implemented a policy and procedure which called for the use of the ADA bathrooms as changing rooms and for the storage of soiled and contaminated linen in free standing bins.

Id. at ¶ 53 (emphasis added).

### 2.    Jury Trial

The Court bifurcated the plaintiff's negligence claim and ADA claim. The Court presided over a jury trial on the negligence claim from January 8 through January 11, 2018. On January 12, 2018, the jury rendered a verdict in favor of the defendant and against the plaintiff on the negligence claim. See Verdict (DE# 160, 1/12/18).

### 3. Narrowing of the Plaintiff's ADA Claim

On June 6, 2018, the defendant filed Defendant's Motion Concerning Award of Attorneys' Fees (DE# 198, 6/6/18) seeking to dismiss the plaintiff's ADA claim based on mootness. Specifically, the defendant argued that the ADA claim was moot because: (1) the defendant had removed the accessible restroom designation from some of its restrooms; (2) the defendant had made structural changes to its remaining accessible restrooms and (3) moveable objects such as linen bins and trash bins were not ADA barriers and, in any event, the plaintiff's claim was moot because the defendant had removed the linen bins and trash bins from the accessible restrooms. Id. at 2-3, 7.

On October 29, 2018, the Court issued an Order which granted in part and denied in part the defendant's motion. See Order (DE# 207, 10/29/18). "The Court conclude[d] that with respect to the barriers addressed by the defendant's structural changes to the facility, the plaintiff's ADA claim [was] moot. [However, t]he plaintiff's ADA claim [was] not moot with respect to the use of trash bins and linen bins which purportedly encroach over the clear floor space of accessible restrooms." Id. at 30.[3] The plaintiff's expert also found trash bins which encroached over the maneuvering clearance on the pull side of the door in some accessible restrooms in violation of the ADA. See Exhibit 222, 220.

---

[3] Clear floor space is different from turning radius or turning space. Clear floor space refers to the space needed for a person using a wheelchair to access a feature such as a toilet, sink or paper towel dispenser. Turning space refers to the space needed for a wheelchair to turn around. Although the plaintiff's initial complaint alleged inadequate clear turning space in the Subject Restroom (WHN1-231), see Complaint (DE# 1 at ¶ 47(b), 8/18/16), the plaintiff no longer disputes that there was sufficient turning space in the Subject Restroom (WHN1-231). In fact, the plaintiff's expert, Carlos Herrera, did not "cite" the defendant for a turning space violation during his inspections. The ADA violations presently at issue are the clear floor space and the maneuvering clearance on the pull side of the door.

### 4. Bench Trial

On January 28, 2019, the Court presided over a bench trial on the plaintiff's ADA

claim. See Trial Transcript (DE# 242, 2/19/19).[4]

The plaintiff's ADA expert Carlos Herrera, the defendant's ADA expert Jeffrey

Gross and the Clinical Manager of the MRI/Radiology Department, Natalie Haaf,

testified in person at the bench trial. The plaintiff played a videotape of a new deposition

of the plaintiff and the parties read from designated portions of the jury trial transcripts

and/or deposition transcripts of the plaintiff, Natalie Haaf, Mercedes Varela, Lee Ghezzi,

Kerry Ninkovich, Luz Warford and William Norkunas.

### D. Plaintiff's Fall

On July 10, 2015, the plaintiff visited CLEVELAND CLINIC for an MRI. The

plaintiff was accompanied by his aide, Laurie Denis. Ms. Denis is also the plaintiff's

fiancée. Ms. Denis assists the plaintiff with many activities of daily living, including

toileting.

The plaintiff asked to use the restroom. An employee of CLEVELAND CLINIC led

the plaintiff and Ms. Denis to an accessible restroom (hereinafter "Subject Restroom" or

"WHN1-231") in the MRI/Radiology Department.

When the plaintiff entered the Subject Restroom (WHN1-231), he encountered

three bins: (1) a red bin for holding biohazardous waste (hereinafter "red bin");[5] a blue

---

[4] The trial transcript contains two sets of page numbers. The Court will cite to the page numbers automatically assigned by the CM/ECF system, appearing at the top, right-hand corner of each page.

[5] The defendant used two kinds of red bins. Red bins which were plastic and red bags suspended in plastic hamper frames. The witnesses and attorneys appear to refer to

bin for soiled laundry (hereinafter "linen bin") and (3) a bin for trash (hereinafter "trash bin").[6] The linen bin and trash bin were free standing bins which measured approximately three feet in height.

The red bin[7] and the linen bin were next to each other, to the right side of the restroom, against the wall. The trash bin was by the sink, beneath the paper towel dispenser.[8] The trash bin was blocking part or half of the sink.

---

both types of red receptacles as "red bins." The term "red bin" as used in this Order refers to both the plastic red bins and the red bags in the hamper frame.

[6] At the bench trial, the defendant brought two types of trash bins as exemplars: a tall bin (like the one the plaintiff encountered in the Subject Restroom (WHN1-231)) and a short bin. The defendant used other kinds of trash bins at its facility as well. See, e.g., Exhibit 162 at Photograph 86, Photograph 93, Photograph 142; Exhibit 163 at Photograph 45. The term "trash bin" will refer to all trash bins.

[7] The defendant disputes the presence of a red bin inside the Subject Restroom (WHN1-231) at the time of the plaintiff's fall. The defendant notes that several witnesses denied seeing a red bin in the Subject Restroom (WHN1-231). The Court credits the plaintiff's testimony that there was a red bin in the Subject Restroom (WHN1-231) at the time of his fall. The Court had an opportunity to observe the plaintiff testify at the jury trial and finds him to be a credible witness. The Court further notes that there was a red bin in an accessible restroom (WNH1-205A) during one of William Norkunas' inspections. See Exhibit 65 at Photograph 17. Additionally, Mercedes Varela, who was part of the defendant's cleaning staff, testified that it was her responsibility to remove the red bins from the restrooms. Ms. Varela's testimony leads the Court to believe that the presence of red bins in the accessible restrooms was not an uncommon occurrence. For these reasons, the Court credits the plaintiff's testimony that there was a red bin in the Subject Restroom (WHN1-231) at the time of his fall.

[8] The defendant disputes that the trash bin was by the sink and beneath the paper towel dispenser in the Subject Restroom (WHN1-231) at the time of the plaintiff's fall. The defendant notes that several "witnesses testified that [the trash bin] was always put [against] the back wall in the far corner." Defendant Cleveland Clinic Florida's Proposed Findings of Fact and Conclusions of Law (DE# 246 at ¶ 6, 3/4/19). For the reasons stated in footnote 12, the Court credits the plaintiff's testimony concerning the location of the trash bin in the Subject Restroom (WHN1-231) on the day of his fall.

The plaintiff suffered a fall inside the Subject Restroom (WHN1-231). The jury determined that the defendant was not the legal cause of this fall. See Verdict (DE# 160, 1/12/18). Prior to the plaintiff's fall, the defendant had never received a complaint about the accessible restrooms at CLEVELAND CLINIC.

### E.    Environmental Services

### 1.    Policies and Procedures

The defendant had a standard operating procedure (hereinafter "SOP") for cleaning the restrooms at CLEVELAND CLINIC. See Cleveland Clinic Environmental Services Restroom Cleaning Standard Operating Procedure, Exhibit 60. The SOP listed the job duties of cleaning staff and "provide[d] a step-by-step daily cleaning process for public restrooms." Id. at 2. The first step was for cleaning staff to "[p]erform hand hygiene and don gloves." Id. Cleaning staff wore gloves when cleaning the restrooms to protect themselves from disease. The SOP instructed cleaning staff to "[e]mpty all waste receptacles and place trash in [a] cart." Id. The SOP did not provide any instruction on the placement of trash bins in any specific location in the accessible restrooms.

The defendant also had policies for handling cleaned linen and soiled linen. See Exhibit 59. One of the policies stated that: "Personnel should wear gloves and other [personal protective equipment][9] and follow Standard Precautions when handling any contaminated or soiled linen." Id. at 2 (footnote added; capitalization in original). The

---

[9] This document uses the acronym "PPE." See Exhibit 59. In the SOP, the acronym "PPE" is defined as "personal protective equipment." See Exhibit 60 at 2.

policies did not address the placement of linen bins in any specific location in the accessible restrooms.

### 2. Practice of Keeping Linen Bins in the Accessible Restrooms

The defendant had a long-standing practice of allowing patients to use the accessible restrooms to change into or out of their hospital gowns. Lee Ghezzi, the former Risk Manager, did not know who approved the practice, but believed it began when the restrooms were constructed.

Not all patients used the accessible restrooms as changing rooms. However, some patients did. Those patients would sometimes throw the hospital gowns in the trash bin and it would cost the defendant money to replace the gowns.

As a cost-saving measure, the defendant adopted the practice of keeping linen bins inside the accessible restrooms at CLEVELAND CLINIC. Patients who used the accessible restrooms as changing rooms could then place the soiled hospital gowns in the linen bins. The hospital gowns could then be picked up, laundered and reused.

Natalie Haaf, the Clinical Manager of the MRI/Radiology Department, did not know if CLEVELAND CLINIC had a written policy or procedure pertaining to the placement of linen bins in the accessible restrooms or when the practice began. She believed the linen bins had been in the accessible restrooms for "quite a few years."

### 3. Placement of Bins in Specific Locations in the Accessible Restrooms

#### a. Linen Bins

Kerry Ninkovich, the Director of Environmental Services, communicated with the cleaning staff concerning the placement of the linen bins and trash bins in the

restrooms. In the Subject Restroom (WHN1-231), the cleaning staff was supposed to place the linen bin against the wall on the right-hand side. Melissa Cassamajor, a CLEVELAND CLINIC employee, testified that the linen bin was usually placed in the corner of that wall and the trash bin would be placed next to it.

Natalie Haaf's office was located across the hall from the Subject Restroom (WHN1-231). She used the Subject Restroom (WHN1-231) on a regular basis for approximately eight or nine years. Ms. Haaf testified that in the Subject Restroom (WHN1-231), the linen bin was kept in the corner of the room on the right-hand side and that the trash bin was located beside the linen bin. See Trial Transcript (DE# 242 at 189, 2/19/19).[10] Ms. Haaf testified that the linen bin and trash bin had always been in this location in the Subject Restroom (WHN1-231). Id.

The plaintiff's expert, Carlos Herrera, found that when the linen bin was placed in the corner and the trash bin was placed next to it in the Subject Restroom (WHN1-231) (the location where Ms. Haaf testified it was "always" kept), the trash bin would encroach over the maneuvering clearance on the pull side of the door in violation of the ADA. See February 26, 2018 Expert Report, Exhibit 222 at 2; Exhibit 162 at Photograph 5. In another accessible restroom (WNH1-205A), Mr. Herrera found that when the linen bin was placed in the corner against the wall, it encroached over the seat cover dispenser in violation of the ADA. Exhibit 222 at 4; Exhibit 162 at Photograph 44. In a

---

[10] In her testimony, Ms. Haaf referred to the linen bin as being in the corner, on the *left-hand* side because she was describing the Subject Restroom (WHN1-231) from the perspective of someone sitting on the toilet. See Trial Transcript (DE# 242 at 189, 2/19/19). Other witnesses described the linen bin as being in the corner, on the *right-hand* side, from the perspective of someone entering the Subject Restroom (WHN1-231). For consistency and to avoid confusion, the Court will describe the location of the bins from the perspective of someone entering the accessible restrooms.

third accessible restroom (WNH1-207A),[11] Mr. Herrera found that when the linen bin was placed in the corner against the wall, it encroached over the seat cover dispenser in violation of the ADA. Exhibit 222 at 5; Exhibit 162 at Photograph 65. Thus, the defendant's practice of keeping linen bins inside the accessible restrooms and placing them in the corner against the wall resulted in ADA violations in three accessible restrooms.

After Mr. Herrera's February 26, 2018 inspection, the defendant removed the linen bins from the accessible restrooms in the MRI/Radiology Department. When Mr. Herrera returned to the facility on May 3, 2018, he did not find linen bins in the accessible restrooms. The linen bins were still in the exam rooms and in at least some non-accessible restrooms. See Exhibit 163 at Photographs 11 and 108 (showing linen bins in two non-accessible restrooms).

### b. Trash Bins

Kerry Ninkovich testified that the placement of trash bins against the far wall was a procedure, not a policy. As a matter of procedure, trash bins were supposed to be placed against the far wall, so they would not interfere with the toilet and sink in the accessible restrooms. See Trial Transcript (DE# 242 at 169-70, 2/19/19) (Q. "What is the policy? Where are they kept? . . . A. "Wastebaskets are usually kept at the opposite end so they don't interfere with either the toilet or the sink. So it would be on the far wall, the far wall from the fixtures."). Consistent with this procedure, the trash bin in the Subject Restroom (WHN1-231) was supposed to have been placed against the far wall.

---

[11] WNH1-207A was an accessible restroom at the time of Mr. Herrera's February 26, 2018 inspection. The defendant later removed that designation and WNH1-207A became a non-accessible restroom.

Ms. Haaf testified that the trash bins were put in the same place (the far, right-hand corner) in other restrooms in the radiology department. See Trial Transcript (DE# 242 at 219, 2/19/19). Ms. Haaf agreed that the trash bins were placed in a location where they would not intrude upon the sink, toilet and other features of the accessible restrooms. Id. at 219-20.

Ms. Haaf discussed the placement of the trash bins with Mr. Ninkovich. According to Mr. Ninkovich, the people who controlled the placement of the trash bins were the employees. Mr. Ninkovich instructed his staff that they must place the trash bins back in their place when they finished cleaning the floors.

Mercedes Varela worked at the CLEVELAND CLINIC for approximately five years and was still employed there at the time of her testimony. Ms. Varela was responsible for cleaning six restrooms in the MRI/Radiology Department, including the Subject Restroom (WHN1-231). Consistent with the procedure described by Mr. Ninkovich and Ms. Haaf, Ms. Varela always placed the linen bin and the trash bin against the far wall on the right-hand side of Subject Restroom (WHN1-231). When Ms. Varela cleaned the Subject Restroom (WHN1-231), she made sure to leave the linen bin and trash bin in this position. Ms. Varela never placed the trash bin beneath the paper towel dispenser and she never saw the trash bin located beneath the paper towel dispenser in the Subject Restroom (WHN1-231). Mr. Ninkovich was not aware of any procedure where the trash bin in the Subject Restroom (WHN1-231) would have been placed against the sink.

Luz Warford was part of the cleaning staff at CLEVELAND CLINIC for three years. Ms. Warford was responsible for cleaning and inspecting the restrooms in the

MRI/Radiology Department, including the Subject Restroom (WHN1-231). When she cleaned the Subject Restroom (WHN1-231), Ms. Warford always placed the trash bin near the sink, beneath the paper towel dispenser. Sometimes, Ms. Warford would return to clean the Subject Restroom (WHN1-231) and the trash bin was not where she had left it. Ms. Warford did not know who moved the trash bin, but she would always return the trash bin to its position beneath the paper towel dispenser.

On approximately July 31, 2015, Ms. Warford was terminated. Ms. Warford testified that she wanted to continue working at CLEVELAND CLINIC, but Mr. Ninkovich told her she was being terminated because she was a very good worker and that was causing friction with her co-workers.[12]

Ms. Warford signed an affidavit for the plaintiff in the instant case because she was told, if she signed the affidavit, she would not have to testify in Court.

The Court finds that the defendant had a procedure for the placement of trash bins in specific locations in the accessible restrooms. In accordance with this procedure, the trash bins were to be placed against the far wall, so they would not interfere with the toilet and sink in the Subject Restroom (WHN1-231) and in other accessible restrooms. However, this procedure was not always followed. The Court credits Ms. Warford's

---

[12] The defendant argues that Ms. Warford is not a credible witness because she claimed she was fired for outperforming her coworkers and because she signed an affidavit for the plaintiff believing that, in doing so, she would not have to appear at trial. The Court agrees with the defendant that the reason provided by Ms. Warford for her termination–that she was "too good" at her job–is unusual. The Court would not expect an employer to terminate an employee for this reason. Nonetheless, the Court finds Ms. Warford's testimony concerning the Subject Restroom (WHN1-231) is corroborated by the plaintiff's testimony and by photographs of other accessible restrooms taken in this case. Therefore, the Court finds Ms. Warford to be a credible witness, at least with respect to her testimony concerning the Subject Restroom (WHN1-231).

testimony that she always placed the trash bin beneath the paper towel dispenser. This testimony is consistent with the plaintiff's testimony that he observed the trash bin by the sink and beneath the paper towel dispenser on the day of his fall. Ms. Warford's testimony is also consistent with photographs of other accessible restrooms taken by the plaintiff's expert, Carlos Herrera.

Mr. Herrera inspected the defendant's facility on February 26, 2018. See Exhibit 222. Mr. Herrera took photographs of the accessible restrooms during this scheduled and announced inspection. Mr. Herrera did not move any trash bins or linen bins during his inspection. Despite the defendant's procedure of placing the trash bins against the far wall where they would not interfere with the toilet and sink, Mr. Herrera found trash bins placed beneath the paper towel dispensers in two accessible restrooms (WNH1-205A and WNH1-207A). See Exhibit 162 at Photographs 32 (WNH1-205A), 51 (WNH1-207A).[13]

The Court does not believe Ms. Warford was a rogue employee who was placing the trash bin beneath the paper towel dispenser on her own accord.[14] Approximately, two and a half years after Ms. Warford was terminated, an employee was still placing the trash bin beneath the paper towel dispenser in at least some of the accessible

---

[13] WNH1-207A is no longer an accessible restroom. However, at the time of Mr. Herrera's February 26, 2018 inspection, WNH1-207A was an accessible restroom.

[14] Even if Ms. Warford was placing the trash bins in the wrong location, the defendant should have discovered this problem and addressed it during the three years when Ms. Warford "always" placed the trash bin beneath the paper towel dispenser. The practice of placing the trash bin beneath the paper towel dispenser in at least some of the accessible restrooms remained even after Ms. Warford was terminated as Mr. Herrera's photographs show.

restrooms (WNH1-205A and WNH1-207A) on the day of Mr. Herrera's February 26, 2018 inspection.[15]

In sum, while CLEVELAND CLINIC had a practice of placing the trash bin against the far wall (away from the toilet and sink) in the accessible restrooms, this practice was not uniformly followed or enforced. Some employees, at the time of the plaintiff's fall and through at least February 26, 2018, would place the trash bins beneath the paper towel dispensers in at least some of the accessible restrooms in violation of the ADA and notwithstanding the defendant's stated practice.

### c. Red Bins

Kerry Ninkovich testified that the red bins were not normally kept in the restrooms. Mr. Ninkovich, Ms. Haaf, Ms. Cassamajor, Ms. Warford and Ms. Varela testified that they never saw a red bin in the Subject Restroom (WHN1-231). Ms. Haaf testified that there was no reason for a red bin to be in the Subject Restroom (WHN1-231).

---

[15] The Court also has reason to believe that the trash bins were placed beneath the paper towel dispensers in WNH1-205A and WNH1-207A during William Norkunas' January 30, 2017 inspection. Mr. Norkunas' photographs of WNH1-205A and WNH1-207A show where the trash bins were placed on that day. See Exhibit 65 at Photograph 16 ("Restroom - WNH1-205A(4)"); id. at Photograph 11 ("Restroom - WNH1-207A(3)"). The camera angles of Mr. Norkunas' photographs are not wide enough to show the paper towel dispensers in WNH1-205A and WNH1-207A. Id. However, the photographs taken by Mr. Herrera during his February 26, 2018 inspection show where the paper towel dispensers were located in WNH1-205A and WNH1-207A. Comparing the photographs taken by Mr. Norkunas with the layouts of WNH1-205A and WNH1-207A provided by Mr. Herrera's photographs, it is evident that the trash bins were placed beneath the paper towel dispensers in WNH1-205A and WNH1-207A during Mr. Norkunas' January 30, 2017 inspection as well. Compare Exhibit 65 at Photograph 16 ("Restroom - WNH1-205A(4)") with Exhibit 162 at Photograph 32 (WNH1-205A); Compare Exhibit 65 at Photograph 11 ("Restroom - WNH1-207A(3)") with Exhibit 162 at 51 (WNH1-207A). In fact, a sliver of the paper towel dispenser is visible in a photograph of WNH1-205A. See Exhibit 65 at Photograph 16 ("Restroom - WNH1-205A(4)").

Ms. Haaf did not recall seeing a red bin in any of the restrooms in the MRI/Radiology Department. Melissa Cassamajor similarly testified that she did not recall seeing any red bins in the restrooms and that they are usually kept in the procedure rooms. In fact, Ms. Cassamajor testified that the red bins were "too big to even go into the restroom." Trial Transcript (DE# 242 at 181). However, Ms. Cassamajor's testimony is undermined by a photograph taken by Mr. Norkunas during his January 30, 2017 inspection which showed a red bin in an accessible restroom (WNH1-205A). See Exhibit 65 at Photograph 17.

Mr. Ninkovich did not know why there was a red bin in this accessible restroom (WNH1-205A) on the day of Mr. Norkunas' inspection. Ms. Haaf similarly did not know why Mr. Norkunas encountered a red bin in this accessible restroom. Nonetheless, she explained that this accessible restroom (WNH1-205A) has a second door leading to an exam room. When a patient was scheduled for a specific procedure, such as a fluoroscopy, an employee would temporarily place a red bin inside that accessible restroom (WNH1-205A). According to Ms. Haaf, the employee would remove the red bin from the accessible restroom after the patient was finished.

The red bins contain biohazardous waste. Ms. Warford's supervisor instructed her not to touch the red bins because another employee would dispose of the materials inside the red bins.

Ms. Varela, who cleaned six restrooms in the MRI/Radiology Department, testified that the red bins were her responsibility. Ms. Varela stated that sometimes the x-ray room employees placed red bins inside the restrooms and that she would take the red bins out of the restrooms.

The Court finds that the red bins were sometimes placed in the accessible restrooms when a patient was having a specific procedure. An employee was supposed to remove the red bin after the patient left the accessible restroom. However, the defendant's employees did not always remove the red bins immediately. Unlike the linen bins and trash bins, the red bins were not always present in the accessible restrooms. For this reason and as discussed in the Conclusions of Law section below, the Court finds that the red bins do not constitute a barrier under the ADA.

### 4. Movability of Linen Bins and Trash Bins

Both parties presented evidence concerning the movability of the linen bins and trash bins in the accessible restrooms. Jeffrey Gross, the defendant's expert, opined that the linen bins and trash bins were moveable objects and therefore were not covered by the ADA. Kerry Ninkovich opined that the trash bins were moveable and could be pushed by persons using the restroom. Natalie Haaf also testified that the trash bins were moveable. Luz Warford acknowledged that the trash bins were moveable because when she cleaned the Subject Restroom (WHN1-231), sometimes the trash bin was not in the same location.

The plaintiff presented competing evidence that the linen bins and trash bins were not readily moveable. William Norkunas, one of the plaintiff's experts, acknowledged that the trash bins were moveable. However, Mr. Norkunas also opined that the trash bins presented a barrier to access because he observed that sometimes these trash bins were full and thus became heavier. Mr. Norkunas also opined that while someone with upward mobility might be able to move the trash bin, someone with a disability like the plaintiff's might not be able to move anything.

Carlos Herrera, the plaintiff's second expert, testified that he believed a photograph showed the wheels of a linen bin were in the "locked" position. See Exhibit 162 at Photograph 5. However, Mr. Herrera did not try to move the linen bin.

The plaintiff testified that he would not have been able to physically push, lift or move the linen bin or trash bin in the Subject Restroom (WHN1-231). The plaintiff uses a joystick to control his motorized wheelchair. He moves the joystick with his left hand. The plaintiff cannot do anything with his right hand and therefore, he does not have a free-hand to do any lifting or pushing.

Additionally, the plaintiff has a compromised immune system. Due to his compromised immune system, the plaintiff would not risk touching the linen bin and trash bin because they are covered in germs. The plaintiff did not know if Ms. Denis could physically move the bins. However, the plaintiff believed that Ms. Denis would not touch the bins because of the germs and that Ms. Denis would not touch the bins and then touch the plaintiff.

The Court finds that the linen bins and trash bins were not moveable objects for the plaintiff or persons with disabilities like the plaintiff's disability. The Court notes that the exemplar bins the defendant brought to the bench trial were empty and thus, the bins would likely be heavier when they are in use. The taller bin measured three feet in height and might be cumbersome for a wheelchair user to maneuver. Additionally, the Court notes that the short bin was heavier than the tall bin and that a wheelchair user would likely have to reach down to push the short bin.

The Court also finds that the linen bins and trash bins were not moveable objects for another reason. The linen bins and trash bins were in a hospital environment. The

defendant's own employees wear gloves to protect themselves from disease when handling the linen bins and trash bins. Ms. Haaf testified that, if she were asked to take out the linen bins or trash bins, she would wear gloves to protect herself because the linen bins and trash bins could be contaminated. The defendant's SOP instructs staff to wear gloves when cleaning the restrooms. See Exhibit 60 at 2. The defendant's policies for handling cleaned linen and soiled linen also instructs staff to "wear gloves and other [personal protective equipment] and follow Standard Precautions when handling any contaminated or soiled linen." See Exhibit 59 at 2.

Given that the defendant requires its employees to wear gloves as a protective measure when handling the linen bins and trash bins, it would be unreasonable to expect visitors (both disabled and non-disabled individuals) to move the linen bins and trash bins inside the accessible restrooms at CLEVELAND CLINIC.

In sum, the plaintiff and persons with disabilities like the plaintiff's would not be able to move the linen bins and trash bins in the accessible restrooms. Additionally, even though the linen bins and trash bins could physically be moved by non-disabled individuals, the Court finds that it would be unreasonable to expect visitors (both disabled and non-disabled) to move the linen bins and trash bins in the defendant's facility.

### F.    Changes to the Radiology Department

#### 1.    Removal of Linen Bins from the Accessible Restrooms

As noted above, the linen bins have now been removed from the accessible restrooms in the MRI/Radiology Department. The linen bins are still in the exam rooms

and in at least some non-accessible restrooms. See Exhibit 163 at Photographs 11 and 108 (showing linen bins in two non-accessible restrooms).

There was no written policy or procedure addressing the removal of the linen bins from accessible restrooms in the MRI/Radiology Department. The defendant decided that it would tell patients not to throw their hospital gowns in the trash bin and to place them in the linen bins in the examination rooms.

Natalie Haaf did not believe a written policy concerning where patients could change into their hospital gowns was necessary because this information had been communicated verbally to every employee. Ms. Haaf testified that supervisors were aware of where patients should change because supervisors had monthly meetings with their staff. They also used email and every morning, eight supervisors, two managers and a director would meet for "huddles."

Natalie Haaf testified that now that the linen bins had been removed from the accessible restrooms in the MRI/Radiology Department, employees could not get them back unless someone ordered new ones. That order had to be approved by a director.

### 2. New Construction

The defendant is in the process of building an MRI and CT suite. The defendant intends to include designated male and female changing rooms in the new MRI and CT suite.

In the interim, the MRI/Radiology Department has converted an office to a changing room for the "MRI patients because in that area, nobody can go into the zones without being changed first. All other patients for all the other modalities change in the exam room that they're going to have their procedure in." Trial Transcript (DE# 242 at 213, 2/19/19). The converted office will be used as a changing room until construction of

the MRI and CT suite is completed. The defendant did not provide an estimated completion date for this project.

### G.    Expert Testimony

#### 1.    Plaintiff's Experts

The plaintiff retained two ADA experts, William Norkunas and Carlos Herrera. Mr. Norkunas inspected CLEVELAND CLINIC on January 30, 2017, October 5, 2017 and October 30, 2017. Mr. Herrera inspected CLEVELAND CLINIC on February 26, 2018 and May 3, 2018. The plaintiff accompanied the experts and encountered barriers during each inspection. The plaintiff's experts prepared a total of four reports which alleged numerous ADA violations at CLEVELAND CLINIC.

#### a.    William Norkunas

William Norkunas has served as an ADA expert since 1990. Mr. Norkunas prepared two reports in which he opined that some of the defendant's accessible restrooms were not ADA compliant.

Mr. Norkunas also inspected a diagram depicting the Subject Restroom (WHN1-231) as the plaintiff encountered it on July 10, 2015, the day of his fall. See Exhibit 25. The diagram was prepared by Ms. Denis. Mr. Norkunas opined that the placement of the trash bin impinged on the clear floor space around the sink. Mr. Norkunas noted that a lot of hospitals were recessing trash bins into the walls to address this problem.

#### b.    Carlos Herrera

Carlos Herrera is an ADA consultant, a general contractor and a civil engineer. Mr. Herrera has a bachelor's degree in civil engineering and has a plan review inspector's license from the International Construction Council. Mr. Herrera prepared two reports in which he documented numerous ADA violations at CLEVELAND CLINIC.

### (1)   February 26, 2018 Inspection

Mr. Herrera first inspected CLEVELAND CLINIC on February 26, 2018. Mr. Herrera inspected eight restrooms which, at the time, had been designated accessible restrooms: WNH1-231, WNH1-205A, WNH1-207A, WNH2-202, WNH3-102, WNH4-102, WNH1-225 and Main Lobby Restroom Building 2950A. See Exhibit 222.

In the Subject Restroom (WHN1-231), Mr. Herrera observed that when the linen bin was placed next to the trash bin against the far wall (consistent with the defendant's stated procedure), the trash bin encroached over the maneuvering clearance on the pull side of the door in violation of the ADA. See Exhibit 162 at Photograph 5. In total, Mr. Herrera found four instances where a trash bin encroached over the maneuvering clearance on the pull side of the door (Items 1, 30, 38, 57). See Exhibit 222. The February 26, 2018 inspection was the first time one of the plaintiff's experts identified an ADA violation concerning the maneuvering clearance on the pull side of the door. Mr. Herrera also found five instances where a trash bin (Items 6, 14, 27) or a linen bin (Items 12 and 21) encroached over the clear floor space in an accessible restrooms. Id.

In total, Mr. Herrera found 57 ADA violations at CLEVELAND CLINIC during this inspection. Mr. Herrera took photographs of each violation. See Exhibit 162. Mr. Herrera did not move any trash bins or linen bins. The trash bins and linen bins depicted in these photographs were in the positions Mr. Herrera found them during his inspection.[16]

---

[16] Some of the photographs taken by Mr. Herrera show "wet floor" signs. During Mr. Herrera's cross-examination, the defendant suggested that the restrooms were in the process of being cleaned and, as a result, the trash bins were temporarily placed beneath the paper towel dispensers. The Court rejects this explanation. The defendant did not present any direct testimony or evidence explaining the presence of the "wet floor" signs. Moreover, there are no photographs of mops, buckets or cleaning supplies.

### (2)  May 3, 2018 Inspection

The defendant corrected some of the 57 ADA violations identified in Mr.

Herrera's February 26, 2018 report by re-designating three restrooms (WNH1-207A,

WNH3-102 and WNH1-225) which had previously been designated accessible

restrooms as non-accessible restrooms. Five restrooms (WNH1-231, WNH1-205A,

WNH2-202, WNH4-102 and Main Lobby Restroom Building 2950A) retained their

accessible restroom designation.

On May 3, 2018, Mr. Herrera returned to the defendant's facility to do a follow up

inspection. Mr. Herrera inspected the five remaining accessible restrooms and found

approximately 10 ADA violations which either remained from the February 26, 2018

inspection or were newly created because of inadequate ADA "modifications." See

Exhibit 220. Mr. Herrera found ADA violations in three of the five remaining accessible

restrooms (WNH1-205A, WNH2-202 and Main Lobby Restroom Building 2950A).

In WNH1-205A, Mr. Herrera had previously found that the trash bin encroached

over the clear floor space of the paper towel dispenser. See Exhibit 222; Exhibit 162 at

32. The defendant "remedied" this violation by moving the trash bin beneath another

feature, the seat cover dispenser. See Exhibit 163 at Photograph 40. When Mr. Herrera

returned to the facility on May 3, 2018, he found that the trash bin encroached over the

clear floor space of the seat cover dispenser.

In WNH2-202, Mr. Herrera had previously found that the trash bin encroached

over the clear floor space of a baby changing station. See Exhibit 222; Exhibit 162 at

86. The defendant "remedied" this violation by swapping the baby changing station with

---

The restrooms do not appear to be in disarray and the trash bins appear to be
purposefully aligned beneath the paper towel dispensers.

a seat cover dispenser, but leaving the trash bin in place. When Mr. Herrera returned to the facility on March 3, 2018, he found that the trash bin encroached over the newly installed seat cover dispenser. See Exhibit 163 at Photograph 45.

In Main Lobby Restroom Building 2950A, Mr. Herrera had previously found that a trash bin encroached over the maneuvering clearance on the pull side of the door. See Exhibit 222 at 10. Mr. Herrera found this same violation when he returned on May 3, 2018. See Exhibit 220 at 13.

The violations Mr. Herrera found in these accessible restrooms (WNH1-205A, WNH2-202 and Main Lobby Restroom Building 2950A) during his May 3, 2018 re-inspection were essentially the same violations he found on February 26, 2018. Mr. Herrera did not return to CLEVELAND CLINIC after his May 3, 2018 inspection.

At trial, Mr. Herrera acknowledged that he did not know if there were presently any linen bins in the accessible restrooms in the MRI/Radiology Department. Mr. Herrera did not know if some of the trash bins had been removed from the accessible restrooms. Mr. Herrera did not know if the baby changing station had been removed from an accessible restroom.

## 2. Defendant's Expert

The defendant retained Jeffrey Gross as an expert. Mr. Gross is an architect. He has been doing ADA consulting since the early 1990s.

Mr. Gross was at CLEVELAND CLINIC approximately nine times. When he inspected Subject Restroom (WHN1-231), Mr. Gross focused on the clear floor space surrounding the toilet and the sink. Mr. Gross placed the linen bins and trash bins in various positions and took photographs of the Subject Restroom (WHN1-231). Mr.

Gross opined that when the trash bin and linen bin were placed in the right-hand corner of the Subject Restroom (WHN1-231), they did not encroach over the clear floor space.

## II.    CONCLUSIONS OF LAW

### A.    ADA

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the ADA governs public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Congress delegated to the Department of Justice ("DOJ") the authority to enforce the ADA and promulgate regulations under Title III, 42 U.S.C. §§ 12186(b), 12188(b), 12206. Pursuant to that authority, the DOJ adopted the ADA Accessibility Guidelines of the United States Access Board ("ADAAG") and ADA Standards for Accessible Design ("ADA Standards").

Public accommodations must follow the requirements of the 2010 ADA Standards, including both the Title III regulations at 28 CFR part 36, subpart D and the ADAAG at 36 CFR part 1191, appendices B and D. Public accommodations must remove architectural barriers to elements subject to the 2010 ADA Standards when it is readily achievable.

Elements in existing facilities built or altered in compliance with the 1991 ADA Standards do not need any further modifications. If the facility chooses to alter elements

24

compliant with 1991 ADA Standards, it is necessary to meet the 2010 ADA standards to the maximum extent feasible.

**B.  PRIMA FACIE CASE**

Under Title III, the plaintiff must prove that "(1) he is a disabled individual; (2) the defendant[ ] own[s], lease[s], or operate[s] a place of public accommodation; and (3) the defendant[ ] discriminated against the plaintiff within the meaning of the ADA." Norkunas v. Seahorse NB, LLC, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12182(a)).

In the instant case, the parties have stipulated to the first and second element. See Joint Pretrial Stipulation (DE# 216 at 3-4, 1/15/19). At issue is the third element, whether the defendant discriminated against the plaintiff within the meaning of the ADA. Title III defines "discrimination" as, inter alia, "a failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

**1.  Barriers to Access**

Title III defines "discrimination" as, inter alia, "a failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Throughout this case, the defendant has maintained that moveable objects such as linen bins and trash bins are not architectural barriers under the ADA.

**a.  Linen Bins and Trash Bins**

The term "architectural barrier" is not defined in the ADA. Some courts have described architectural barriers as "physical features that limit or prevent people with disabilities from obtaining the goods or services that are offered." Mielo v. Steak 'n

Shake Operations, Inc., 897 F.3d 467, 477 (3d Cir. 2018) (citing DOJ's ADA Guide for Small Businesses, available at https://www.ada.gov/smbusgd.pdf.).

The Court finds that under certain circumstances, freestanding objects such as linen bins and trash bins can constitute barriers under the ADA. In Crandall v. Starbucks Corp., 249 F. Supp. 3d 1087, 1095 (N.D. Cal. 2017), for instance, the district court found that a moveable merchandise display was a barrier under the ADA. In doing so, the district court rejected the defendant's argument that the merchandise display was a mere temporary obstruction. Notwithstanding its movability, the district court found that the merchandise display was a barrier under the ADA because it was placed in a position where it narrowed the path of travel, the merchandise display remained in that position over a period of months (the display was there when the plaintiff visited the store in January and was still in the same location when the plaintiff's investigator visited the store in the spring) and when the merchandise display was moved out of place, employees doing sweeps of the store would return the display to its original location where it narrowed the path of travel.

Other Courts have found that moveable objects are not barriers under the ADA. In Ass'n for Disabled Americans. Inc. v. Key Largo Bay Beach, LLC, this Court refused to issue an injunction addressing portable lounge chairs and plastic waste cans. 407 F. Supp. 2d 1321, 1343-44, 1346 (S.D. Fla. 2005). This Court determined that it would be "futile … to enter an injunction requiring lounge chairs to be moved" because "they [we]re of the typical portable variety, constantly moved not only by staff, but also by guests." Id. at 1343-44. For the same reason, this Court also refused to issue an injunction with respect to plastic waste cans in the restrooms, noting that the

defendant's expert "witnessed the plastic waste cans being moved from the clear floor space during [a] visit." Id. at 1346.

In Nat'l Alliance for Accessibility, Inc. v. J. Windsor Invs. (3600 S.W. 22nd) LLC., this Court, citing Key Largo, found that a wastepaper basket in a restroom was not a barrier under the ADA. DE# 76 at 10, Case No. 13-cv-20285-JAL (S.D. Fla. Sept. 29, 2014). This Court recognized the futility of issuing an injunction which applied to objects that are constantly moved and noted that the defendant had already instructed its staff to relocate moveable items. Id.

The Court finds that the instant case is distinguishable from Key Largo and Windsor. Here, the linen bins and trash bins were not constantly moved by employees and visitors to CLEVELAND CLINIC. Unlike the lounge chairs and plastic waste cans in Key Largo or the wastepaper basket in Windsor, no one witnessed the linen bins and trash bins being "constantly moved" by employees and guests in the instant case.

As a practical matter, the linen bins and trash bins were not readily "moveable" objects. The plaintiff and persons with disabilities like the plaintiff's would not be able to physically move the linen bins and trash bins. Additionally, the Court would not expect even able-bodied individuals to move the linen bins and trash bins in the accessible restrooms. The linen bins and trash bins are in a hospital environment and the defendant expects its staff to wear gloves to protect themselves from infection when handling the linen bins and trash bins. Thus, it would be unreasonable to expect visitors to the CLEVELAND CLINIC to move the linen bins and trash bins out of the way even if these visitors were physically able to move the linen bins and trash bins.

The instant case is more akin to the merchandise display in <u>Crandall</u>. Like the merchandise display in <u>Crandall</u>, the linen bins and trash bins were in a dedicated location. Mr. Ninkovich testified that the linen bins (when they were in the accessible restrooms) and trash bins were supposed to be placed in designated locations in the accessible restrooms, in accordance with the defendant's practice. Even though Ms. Warford and Ms. Varela disagreed on where the trash bin was supposed to be in the Subject Restroom ("WHN1-231"), they both testified that they would always place it in the same spot when they were done cleaning. Additionally, the linen bins and trash bins were in the accessible restrooms at the defendant's facility for several years.

In sum, while linen bins and trash bins would not constitute barriers in every case, the linen bins and trash bins in the instant case constitute barriers to access under the ADA. The linen bins and trash bins are not mere temporary obstructions. The defendant kept linen bins and trash bins in the accessible restrooms for several years and, as a practical matter, they are not "moveable."

> **b.    Red Bins**[17]

The plaintiff has not shown that the red bins are barriers. "The law recognizes that access measures may fail from time to time." <u>Gomez v. Dade Cty. Fed. Credit Union</u>, 610 F. App'x 859, 861 (11th Cir. 2015). For example, "a store aisle or sales counter may become cluttered with merchandise." <u>Id.</u> Temporary obstructions are not barriers under the ADA. In the case of the occasional mechanical failure, the Eleventh Circuit has explained that:

---

[17] The Court addresses the red bins because it is unclear whether the plaintiff seeks to include the red bins in the injunction.

the regulations "do[ ] not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." 28 C.F.R. § 36.211(b). The rule "is intended to clarify that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the Act." 28 C.F.R. pt. 36 app. C § 36.211. But "allowing obstructions or 'out of service' equipment to persist beyond a reasonable period of time would violate [the Act], as would repeated mechanical failures due to improper or inadequate maintenance."

Id.

Unlike the linen bins and trash bins, the red bins were not ordinarily kept in the accessible restrooms. An employee would bring the red bin into the accessible restroom only when a patient was having a specific procedure. The employee was supposed to remove the red bin from the accessible restroom after the patient left. However, sometimes the red bin would be left behind in the accessible restroom. The Court finds that because the red bins were not ordinarily found in the accessible restrooms, they do not constitute a barrier under the ADA. The red bins, unlike the linen bins and trash bins, are more akin to temporary obstructions and do not constitute barriers to access.

### 2. Relevant Violations

At the time of the bench trial, the only relevant ADA violations concerned the clear floor space and the maneuvering clearance on the pull side of the door.

DOJ regulations implementing Title III require that a public accommodation "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211(a). Where a facility provides a feature (e.g., a sink, a toilet, a paper towel dispenser, a seat cover dispenser, a baby changing station), that feature must have an unobstructed, minimum clear floor space. "Clear floor space" is defined by the ADAAG as "[t]he minimum unobstructed floor or ground space required to

accommodate a single, stationary wheelchair and occupant." Id. § 3.5. A minimum clear floor space of 30-inches-by-48-inches is required. See ADAAG § 4.2.4; 2010 ADA Code § 305.3.

The ADA also requires minimum maneuvering clearances on the pull side of the door. The ADA requires a 24-inch minimum maneuvering clearance on the pull side for a parallel latch side approach and a 54-inch minimum deep clear floor area clearance for a door with a closer. See ADAAG § 4.13.6; 2010 ADA Code § 404.2.4.

During Mr. Herrera's February 26, 2018 inspection, Mr. Herrera found instances where linen bins or trash bins encroached over the clear floor space of paper towel dispensers (WNH1-205A, WNH1-207A), seat cover dispensers (WNH1-205A, WNH1-207A) and a baby changing station (WNH2-202). See Exhibit 222.[18] Mr. Herrera also found instances where a trash bin encroached over the maneuvering clearance on the pull side of the door in four accessible restrooms (the Subject Restroom ("WHN1-231"), WNH3-102, WNH4-102 and Main Lobby Restroom Building 2950A). Id.

The defendant made remediations to its facility. Mr. Herrera returned to the defendant's facility on May 3, 2018. See Exhibit 220. During this inspection, Mr. Herrera found a trash bin which encroached over the clear floor space of the seat cover dispenser in two accessible restrooms (WNH1-205A and WNH2-202). Mr. Herrera also found a trash bin encroaching on the maneuvering clearance on the pull side of the door in a third accessible restroom (Main Lobby Restroom Building 2950A).

---

[18] Some of these restrooms are no longer designated accessible restrooms as noted elsewhere in this Order.

The defendant argues that its facility is now free of any ADA violations and, as a result, the plaintiff's ADA claim is moot. For the reasons discussed in this Order, the Court finds that the plaintiff's ADA claim is not moot.

### 3. Achievability

"The ADA imposes different requirements on the owners and operators of facilities that existed prior to its enactment date[, July 26, 1990]. For those facilities, the ADA states that discrimination includes a private entity's 'failure to remove architectural barriers ... where such removal is readily achievable.'" Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273 (11th Cir. 2006) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

"[T]he plaintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case. Gathright-Dietrich, 452 F.3d at 1273 (quoting Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999, 1007 (10th Cir. 2001)).

The Court finds that "the proposed method of architectural barrier removal is 'readily achievable.'" Gathright-Dietrich, 452 F.3d at 1273. Mr. Herrera's reports contained recommendations on how to correct the clear floor space and maneuvering clearance (on the pull side of the door) violations. See Exhibits 220 and 222. Specifically, Mr. Herrera recommended that the defendant relocate the linen bins and trash bins to provide the minimum clear floor space and maneuvering clearance (on the pull side of the door). Id.

The Court finds that the plaintiff has met the third element with respect to the clear floor space and maneuvering clearance (on the pulls side of the door). For the reasons discussed above, the Court finds that the linen bins and trash bins in the instant case constitute barriers under the ADA. The Court also finds that the plaintiff has shown that the removal of these barriers is readily achievable.

## C.    MOOTNESS

The defendant argues that the plaintiff's ADA claim is moot as to the linen bins because it has removed all of the linen bins from the accessible restrooms, has converted an office to a changing room for MRI patients and it is in the process of constructing a new MRI and CT suite which will have a row of changing rooms. The defendant further argues that the plaintiff's ADA claim as to the trash bins is moot because the defendant has installed recessed trash bins in two accessible restrooms (WNH2-202 and WNH1-205A), has removed an extra trash bin from the Main Lobby Restroom Building 2950A and placed a sign in that location in English and Spanish indicating that a trash bin is not to be placed in that space. Evidence concerning the recessed trash bins, the removal of an extra trash bin and the placement of a sign was not presented during the bench trial. It was revealed to the Court for the first time in the Defendant's Motion to Dismiss (DE# 247, 3/4/19). For the reasons discussed herein and as indicated in the Order denying the Defendant's Motion to Dismiss (DE# 247, 3/4/19), the plaintiff's ADA claim is not moot with respect to the linen bins and trash bins.

At the outset, the Court is unaware of any authority that states that a defendant's unfinished construction project moots an existing ADA claim. See Larkin v. Envoy Orlando Holdings LLC, 116 F. Supp. 3d 1316, 1318 (M.D. Fla. 2015) (noting that "[t]he

fact that Defendant [was] in the process of fixing the violations [did] not render th[e] case moot and Defendant ha[d] presented no authority to support this proposition."). Thus, the fact that the defendant is in the process of constructing a new MRI and CT suite, does not moot the plaintiff's claim.

Even assuming arguendo, that the defendant had completed its construction project, the Court is not convinced that the defendant will not return to encroaching on the clear floor space and maneuvering clearance (on the pull side of the door) in its accessible restrooms.

Throughout this litigation, the defendant has consistently maintained that linen bins and trash bins cannot constitute barriers under the ADA. A defendant who does not believe that linen bins and trash bins can violate the ADA is not likely to ensure that its staff maintains linen bins and trash bins outside of areas where they would encroach over the clear floor space and the maneuvering clearance (on the pull side of the door) in its accessible restrooms.

Kerry Ninkovich testified that as a matter of procedure, trash bins were usually kept on the far wall in accessible restrooms, so they would not interfere with the toilet and sink. Despite this procedure, for three years, Luz Warford "always" placed the trash bin beneath the paper towel dispenser in the Subject Restroom ("WHN1-231"). Approximately two and a half years after Ms. Warford's termination, other employees were still placing the trash bin beneath the paper towel dispenser in other accessible restrooms, notwithstanding Mr. Ninkovich's testimony about an established procedure.

The defendant failed to ensure its accessible restrooms were kept free of encroachments during multiple scheduled and announced inspections. The defendant

has not adopted any written rules or policies instructing its staff to keep the clear floor space and the maneuvering clearance (on the pull side of the door) free of encroachments in its accessible restrooms. The defendant has not presented any evidence that it has trained its employees on complying with the ADA. Although Ms. Haaf testified about monthly staff meetings and daily morning "huddles," these conferences have so far been insufficient to impress upon the defendant's employees the importance of complying with the ADA.

When Mr. Herrera inspected the facility on February 26, 2018, he found linen bins and trash bins encroaching over the clear floor space in the accessible restrooms. He also found trash bins encroaching over the maneuvering clearance on the pull side of the door. See Exhibit 222. When Mr. Herrera returned to the facility on May 3, 2018, Mr. Herrera again found trash bins encroaching over the clear floor space of a seat cover dispenser in two accessible restrooms (WNH1-205A and WNH2-202) and a trash bin encroaching over the maneuvering clearance (on the pull side of the door) in a third accessible restroom (Main Lobby Restroom Building 2950A). See Exhibit 220. In other words, Mr. Herrera found WNH1-205A, WNH2-202 and the Main Lobby Restroom Building 2950A with these same violations.

The defendant attempted to "remedy" the violation in WNH1-205A by moving a trash bin from one location where it encroached on a feature to a different location where it encroached on another feature. The defendant attempted to "remedy" the violation in WNH2-202, by swapping a baby changing station with a seat cover dispenser. Inexplicably, the defendant left the trash bin in the same location, where it still encroached on the clear floor space of an accessible feature.

Mr. Herrera found the trash bin in Main Lobby Restroom Building 2950A in the same place where it had previously encroached on the maneuvering clearance on the pull side of the door.

These clumsy attempts at remediation suggest to the Court that the defendant has failed to explain to its staff the ADA's clear floor space and maneuvering clearance requirements. The Court finds no other reasonable explanation for swapping a baby changing station with a seat cover dispenser, but leaving the trash bin in the same location. The Court has no assurances that the defendant would maintain its accessible restrooms free of encroachments absent an injunction.

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007).[19] The defendant has the "stringent" and "formidable" burden of proving that the voluntary cessation doctrine applies. Here, the defendant has not met that burden.

The Court does not believe it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Sheely, 505 F.3d at 1184. Based on the defendant's history of placing linen bins and trash bins in areas which encroach over the clear floor space or the maneuvering clearance (on the pull side of the door) of features in accessible restrooms and the defendant's continued insistence that linen bins and trash bins cannot constitute barriers under the ADA, the Court believes the defendant would likely return to encroaching on the clear floor space or the

---

[19] The Court addresses the Sheely factors in more detail in its Order denying the Defendant's Motion to Dismiss (DE# 247, 3/4/19).

maneuvering clearance (on the pull side of the door) of features in accessible restrooms if an injunction is not issued.

In sum, the Court finds that the plaintiff's ADA claim is not moot. An injunction is necessary to ensure that the defendant keeps the clear floor space and the maneuvering clearance (on the pull side of the door) in its accessible restrooms free of encroachments.

### D.    Injunctive Relief

Injunctive relief is the exclusive remedy for Title III violations. 42 U.S.C. § 12188(a). In the instant case, the plaintiff seeks an injunction prohibiting the defendant from placing linen bins and trash bins[20] in locations in its accessible restrooms which result in clear floor space and maneuvering clearance violations under the ADA.

For the reasons stated in this Order, the Court finds that the defendant had a practice of placing linen bins and trash bins in locations which encroached over the clear floor space and maneuvering clearance (on the pull side of the door) in accessible restrooms. The Court further finds that an injunction is necessary to ensure the defendant maintains its accessible restrooms free of encroachments to the clear floor space and the maneuvering clearance (on the pull side of the door).

### III.    FINAL CONCLUSIONS

Based on the above findings of fact and conclusions of law, the Court finds that the plaintiff, GARY KAHN, is entitled to judgment in his favor and against the defendant, CLEVELAND CLINIC FLORIDA HEALTH SYSTEM NONPROFIT CORPORATION.

---

[20] The plaintiff uses the term "freestanding bins." However, and as discussed in this Order, the Court does not find that the red bins constitute architectural barriers because they not always present in the accessible restrooms.

Pursuant to Fed. R. Civ. P. 58, the Court will enter a final judgment awarding injunctive relief in a separate Order.

The plaintiff, as the prevailing party, is entitled to an award of "reasonable attorney's fees, including litigation expenses, and costs" pursuant to 42 U.S.C. § 12205. The Court retains jurisdiction over attorney's fees, litigation expenses and costs associated with the instant case, for which the plaintiff may file a separate motion in accordance with S.D. Fla. L.R. 7.3.

DONE AND ORDERED in Chambers at Miami, Florida this 22 day of July 2019.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE