UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-61994-CIV-O'SULLIVAN

[CONSENT]

GARY KAHN,

        Plaintiff,

v.

CLEVELAND CLINIC FLORIDA
HOSPITAL,

        Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Defendant's Motion to Dismiss (DE# 247, 3/4/19).

## BACKGROUND

The instant action involves a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (hereinafter "ADA") (Count II). See Plaintiff's Second Amended Complaint (DE# 47, 3/30/17).

On October 29, 2018, the Court issued an Order finding that "[t]he plaintiff's ADA claim [was] not moot with respect to the use of trash bins and linen bins which purportedly encroach[ed] on the clear floor space of accessible restrooms" at the defendant's facility. See Order (DE# 207 at 30, 10/29/18). The plaintiff's expert also found trash bins which encroached over the maneuvering clearance on the pull side of the door. See Exhibits

220 and 222.[1] On January 28, 2019, the Court held a one-day bench trial on the plaintiff's ADA claim. At the conclusion of the bench trial, the Court stated its intent to rule in favor of the plaintiff by issuing an injunction. See Trial Transcript (DE# 242 at 329-30, 2/19/19).[2]

On March 4, 2019, the defendant filed the instant motion seeking to dismiss with prejudice the plaintiff's ADA claim. See Defendant's Motion to Dismiss (DE# 247, 3/4/19) (hereinafter "Motion"). The plaintiff filed his response in opposition on April 1, 2019. See Plaintiff's Response to Defendant's Motion to Dismiss (DE# 250, 4/1/19) (hereinafter "Response"). The defendant filed its reply on April 8, 2019. See Cleveland Clinic's Reply in Support of Motion to Dismiss (DE# 251, 4/8/19) (hereinafter "Reply").

This matter is ripe for adjudication.

## STANDARD OF REVIEW

Rule 12(b)(1) provides for the dismissal of a claim when the Court lacks subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case . . . ." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2002).

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). In the

---

[1] The exhibits cited in this Order refer to those exhibits which were admitted during the bench trial.

[2] The trial transcript contains two sets of page numbers. For clarity, the Court will cite to the page numbers automatically assigned by the CM/ECF system, appearing at the top, right-hand corner of each page.

instant case, the defendant seeks to rely on evidence outside the pleadings – the defendant's expert's most recent report – to challenge the jurisdiction of this Court. As such, the defendant has asserted a factual attack of this Court's subject matter jurisdiction. Id. (stating that "[f]actual attacks challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'") (quoting Dunbar, 919 F.2d at 1529).

"On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1261 (11th Cir. 1997) (citing Dunbar, 919 F.2d at 1529). If the facts necessary to sustain jurisdiction do not implicate the merits of a plaintiff's cause of action, then "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." Id. (citing Dunbar, 919 F.2d at 1529 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

Based on the foregoing, the Court will consider the evidence presented at the January 28, 2019 bench trial in addressing the instant Motion. For the reasons stated in

this Order, the Court will also consider the photographs included in the defendant's new expert report.

## ANALYSIS

**1.   Defendant's Motion to Dismiss**

###       A.   Overview

The defendant argues that the plaintiff's ADA claim is now moot because the defendant has made additional modifications to its facility. Motion at 2. Specifically, the defendant: (1) has converted a former office into a changing room; (2) is in the process of building "an MRI and CT suite, and each of [those] areas will have designated male and female changing rooms;" (3) has recessed the trash bins in two accessible restrooms (WNH2-202 and WNH1-205A) and (4) has removed "the additional trash bin" from another accessible restroom (Main Lobby Building 2950A/Hallway Restroom 2058)[3] and "installed signage in this location in English and Spanish indicating that a trash bin is not to be placed in that space." Id. at 2-3, 5. The defendant asserts that "[b]ecause of these structural changes to Cleveland Clinic, it is absolutely clear that the remaining ADA violations in this case relating to linen bins and trash bins are not reasonably expected to recur." Id. at 10.

---

[3] The Motion refers to this accessible restroom as "Hallway Restroom 2058." The plaintiff's expert, Carlos Herrera, refers to this accessible restroom as "Main Lobby Building 2950A" in his reports. In this Order, the Court will refer to this accessible restroom as "Main Lobby Building 2950A/Hallway Restroom 2058."

## B. Defendant's New Expert Report

In support of the instant Motion, the defendant has filed a new report from its expert, Jeffrey Gross. See Second Supplemental Expert Report Dated February 28, 2019 (DE# 247-2, 3/4/19). The report includes photographs of the recessed trash bins in WNH2-202 and WNH1-205A and the sign in Main Lobby Building 2950A/Hallway Restroom 2058.

The plaintiff argues that the defendant cannot rely on Mr. Gross' post-trial, expert report because the Court previously limited Mr. Gross' bench trial testimony to only those opinions which were included in his prior, timely disclosed, expert report. See Response at 3, see also Trial Transcript (DE# 242 at 246, 248-49, 2/19/19). While the Court agrees with the plaintiff that Mr. Gross cannot submit a new expert report (post-trial and outside the time limitations set forth in Fed. R. Civ. P. 26), the Court will nonetheless take judicial notice of the photographs attached to Mr. Gross' report which show the existence of recessed trash bins in WNH2-202 and WNH1-205A and a sign in Main Lobby Building 2950A/Hallway Restroom 2058. The plaintiff has not challenged the authenticity of these photographs and has not offered to conduct an inspection and submit his own photographs of the new modifications to the defendant's facility.

The plaintiff also notes that Mr. Gross' new report is unsworn and unverified, Response at 3, but does not cite to any case law or rule which would prohibit the filing of an unsworn and unverified expert report. In any event, the Court is not relying on the opinions expressed in Mr. Gross' new report and is only taking judicial notice of the attached photographs.

### C. Timeframe for Determining Mootness

The plaintiff argues that the instant case is not moot because "'the jurisdiction of the court depends upon the state of things at the time of the action brought.' This time-of-filing ... measures all challenges to subject-matter jurisdiction against the state of facts that existed at the time of filing—whether the challenge [was] brought shortly after filing, after the trial, or even for the first time on appeal." Response at 4 (quoting Mollan v. Torrance, 9 Wheat. 537, 539 (1824)).

The plaintiff's argument is not well taken. As previously explained in the Court's October 29, 2018 Order:

> Article III's live case or controversy requirement **"subsists through all stages of federal judicial proceedings, trial and appellate."** Horton v. City of St. Augustine Florida, 272 F.3d 1318, 1326 (11th Cir. 2001) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). "If events that occur **subsequent to the filing of a lawsuit** ... deprive the court of the ability to give the plaintiff ... meaningful relief, then the case is moot and must be dismissed." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting Troiano v. Supervisor of Elections, 382 F.3d 1276, 1281-82 (11th Cir. 2004)).

Order (DE# 207 at 3, 10/29/18) (emphasis added).

The Court will consider the issue of mootness at the present time and take into account the additional modifications described in the instant Motion.

### D. Plaintiff's Speculation Concerning New ADA Violations

The plaintiff also argues that the case is not moot because there has been no new inspection of the defendant's facility and "it is unknown what violations of the ADA may now exist as a result of th[e] alleged 'modifications'" described in the Motion. Response at 5. The plaintiff notes that his experts found ADA violations during each of the five prior

6

inspections and that the defendant's "'modifications' to date have failed to create a facility free of ADA violations." Id. at 5-6. In its reply, the defendant states that "Plaintiff's counsel … never contacted Cleveland Clinic's counsel to ask if Plaintiff's expert could re-inspect the property." Reply at 4.

Mr. Herrera's May 3, 2018 report contained several violations that had asterisks next to them. See Exhibit 220. At the bench trial, Mr. Herrera explained that those asterisks meant that the defendant had corrected a prior ADA violation cited in Mr. Herrera's original February 26, 2018 report and, in doing so, had created a new violation. Thus, while it is true that, in the past, the defendant created new ADA violations when it corrected old ones, the plaintiff has not offered to conduct a new inspection of the facility. The Court will not entertain the plaintiff's speculation that because additional modifications were made to the facility, new ADA violations may now exist.

### E. Mootness

For the reasons discussed below, the Court finds that the defendant's additional modifications[4] to the facility do not moot the plaintiff's ADA claim.

---

[4] As noted above, the defendant has made the following, additional modifications to its facility:

> (1) converted a former office into a changing room; (2) is in the process of building "an MRI and CT suite, and each of [those] areas will have designated male and female changing rooms;" (3) recessed the trash bins in two accessible restrooms (WNH2-202 and WNH1-205A) and (4) removed "the additional trash bin" from another accessible restroom (Main Lobby Building 2950A/Hallway Restroom 2058) and "installed signage in this location in English and Spanish indicating that a trash bin is not to be placed in that space."

Motion at 2-3, 5.

The Court previously found that the plaintiff pled both architectural barriers and policies, practices and/or procedures which violate the ADA. See Order (DE# 207 at 5-6, 10/29/18). With respect to those policies, practices and/or procedures, this Court found that:

> the plaintiff's ADA claim include[d] the defendant's policy, practice or procedure of using accessible restrooms as changing rooms resulting in the encroachment of clear floor space by linen bins and the defendant's policy, practice or procedure of placing trash bins in certain locations which also resulted in the encroachment of clear floor space.

Id. at 7-8. The plaintiff's expert also found trash bins which encroached over the maneuvering clearance on the pull side of the door. See Exhibits 220 and 222.

At the bench trial, the plaintiff sought injunctive relief prohibiting the defendant's policy, practice and/or procedure of placing linen bins and trash bins[5] in locations in its accessible restrooms which result in clear floor space or maneuvering clearance (on the pull side of the door) violations under the ADA.

---

[5] In his proposed injunctive order, the plaintiff uses the phrase "free standing bins." The Court is uncertain whether the plaintiff intends to include red bins in this phrase. For the reasons stated in the Court's Findings of Fact and Conclusions of Law, the plaintiff did not establish that the red bins constitute ADA violations. The plaintiff's experts did not find any ADA violations involving the red bins. Additionally, to the extent the red bins can be considered obstructions, they were only temporary obstructions. Unlike the linen bins and trash bins, the red bins were only occasionally placed in the accessible restrooms. Accordingly, the Court's injunction will not include the red bins.

### i. Defendant's Practice of Placing Linen Bins and Trash Bins in Locations which Encroached Over the Clear Floor Space and/or Maneuvering Clearance in Accessible Restrooms

The evidence presented at the bench trial[6] established that the defendant had a long-standing practice of using the accessible restrooms as changing rooms. This practice began as a cost saving measure. Patients would sometimes use the accessible restrooms to change out of their hospital gowns. The patients would throw the hospital gowns in the trash bin and it would cost the defendant money to replace the hospital gowns. To address this problem, the defendant placed linen bins inside the accessible restrooms. Patients could then put their soiled hospital gowns in the linen bins where they would be collected, washed and reused.

The evidence presented at the bench trial also established the defendant had a practice of placing linen bins and trash bins in a designated location — against the far wall — in the accessible restrooms. Natalie Haaf, the Clinical Manager of Radiology, explained that the trash bins were placed in that location, so they would not intrude upon the sink, toilet and other restroom features. Ms. Haaf further testified that she discussed the placement of the trash bins with Kerry Ninkovich, the Director of Environmental Services, and that Mr. Ninkovich told his staff that they must place the trash bins back in their place when they finished cleaning the floors.

This practice of placing the linen bins and trash bins against the far wall was only sometimes followed by the defendant's employees. When the practice was followed by

---

6 The Court's findings of fact and conclusions of law will be filed in a separate Order. For ease of reference, the Court will include some of those findings of fact and conclusions of law in this Order.

the defendant's employees, it would result in ADA violations in some of the accessible restrooms. For example, the plaintiff's expert, Carlos Herrera, found that when the linen bin and the trash bin were placed against the far wall, it would result in the trash bin encroaching over the maneuvering clearance on the pull side of the door in the Subject Restroom ("WHN1-231"). See Exhibit 162 at Photograph 5.

Even after the defendant removed the linen bins from the accessible restrooms, the practice of placing the trash bin against the far wall resulted in ADA violations in other accessible restrooms. For instance, the practice of placing the trash bin against the far wall resulted in the trash bin encroaching over the clear floor space of the seat cover dispensers in two accessible restrooms (WNH1-205A and WNH2-202). See Exhibit 163 at Photographs 40 and 45.

Sometimes, this practice was not followed, and the trash bin was placed beneath the paper towel dispenser, a violation of the clear floor space requirement of the ADA. See, e.g., Exhibit 162 at Photograph 32.

### ii.   **Sheely**

In Sheely v. MRI Radiology Network, P.A., the Eleventh Circuit applied the voluntary cessation doctrine to determine whether a plaintiff's ADA claim for injunctive and declaratory relief was moot after the defendant stopped engaging in the challenged conduct. 505 F.3d 1173, 1177 (11th Cir. 2007). The Eleventh Circuit "conclude[d] that the plaintiff's claims [were] not moot because the defendant ha[d] not met its heavy burden of showing under controlling law that it [was] 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Id. (quoting Laidlaw, 528 U.S. at

189). In reaching this conclusion, the Eleventh Circuit noted that:

> at least the following three factors [were relevant]: (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

Id. at 1184.

### a. Applicability of Sheely

The defendant maintains that the voluntary cessation doctrine discussed in Sheely does not apply to the instant case because the defendant has made modifications to its facility and, as one court observed, "it would be unreasonable to think that [a defendant] would remove the improvements." Motion at 7 (quoting Nat'l All. for Accessibility, Inc. v. Walgreen Co., No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011)).

In a prior Order, the Court determined that Sheely applied to the instant case. See Order (DE# 207 at 7-8, 10/29/19). In Sheely, the plaintiff alleged that a defendant's policy violated the ADA. 505 F.3d at 1177. The Eleventh Circuit has also applied the Sheely factors to a case involving architectural barriers. See Order (DE# 207 at 7-8, 10/19/19) (citing Kennedy v. Omegagas & Oil. LLC, No. 18-10302, 2018 WL4183462 (11th Cir. Aug. 31, 2018) (per curiam)). Here, the plaintiff pled both architectural barriers and policies, practices or procedures which violated the ADA. Id. at 7-8. Under either theory of the case, the Sheely factors are relevant. The Court will persist in its prior ruling that the Sheely factors are applicable to the instant case. Id.

### b. Sheely Factors

The defendant argues that "even if the Court were to apply Sheely, ... the case is still moot." Motion at 8. The defendant "'bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1351 (11th Cir. 2011) (quoting Laidlaw, 528 U.S. at 189). Sheely states that the voluntary cessation of alleged wrongful conduct will only moot a claim if "it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" 505 F.3d at 1177 (quoting Laidlaw, 528 U.S. at 189). The Court finds that the defendant has not met its heavy burden.

As previously noted, at least three factors are relevant when considering an assertion of mootness based on a private defendant's voluntary cessation of allegedly wrongful conduct:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

Sheely, 505 F.3d at 1184. For the reasons discussed below, the Courts finds that the Sheely factors weigh against a finding of mootness.

### (i)     Factor One: Isolated or Unintentional Conduct

The first factor asks the Court to consider whether the alleged wrongful conduct was isolated or unintentional. Sheely, 505 F.3d at 1184. With respect to the first factor, the Eleventh Circuit has noted that:

> courts are more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or

was at least engaged in reluctantly. Conversely, [courts] are more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a "continuing practice" or was otherwise deliberate.

Sheely, 505 F.3d at 1184-85.

In addressing this factor, the defendant notes that there was no evidence that the defendant engaged in "a malicious or reckless disregard for the ADA or for disabled [patients]." Motion at 8 (quoting Kennedy v. Omegagas & Oil, LLC, 748 Fed. App'x. 886, 891 (11th Cir. 2018) (alteration in Motion)). Although the instant case was filed on August 18, 2016, the defendant argues that the defendant "was first made aware of practically all of the alleged violations of the ADA after Plaintiff's second expert [Carlos Herrera] inspected the [facility] on February 26, 2018." Id. The defendant notes that "[Mr. Herrera's] inspection revealed many alleged violations that were not included in the reports of Plaintiff's prior expert." Id. The defendant further argues that it "remediated the vast majority of [the alleged violations] by either fixing the issue or de-designating the restroom as accessible before [Mr. Herrera]'s second inspection on May 3, 2018." Id.[7]

In its prior Order (DE# 207, 10/29/18), the Court found that the first factor did not

---

[7] The defendant reminds the Court that the plaintiff filed a notice on May 11, 2018 wherein the "[p]laintiff 'represent[ed] to this Court that Defendant's facility [was] now in substantial compliance with the ADA.'" Motion at 8 (quoting Plaintiff's Notice of Filing of Expert's Post Compliance Remediation Accessibility Inspection Report (DE# 195, 5/11/18) (hereinafter "Plaintiff's Notice"). The Court notes that the Plaintiff's Notice also stated that "[v]iolations of the ADA still existed at Defendant's facility as of 5-03-18." Plaintiff's Notice (DE# 195 at ¶ 5, 5/11/18). Moreover, the Plaintiff's Notice was part of the record when the Court issued its prior Order (DE# 207) finding that the plaintiff's ADA claim concerning linen bins and trash bins was not moot. The Plaintiff's Notice (DE# 195) did not moot the case then and it does not moot the case now.

favor either party:

> Here, the Court finds that the first factor is neutral. On the one hand the record suggests that the alleged violations have been ongoing for a substantial period of time. At least as to the linen bins, the alleged violation has been ongoing since 2001 and the defendant has had notice of some of the plaintiff's alleged ADA violations since the filing of this lawsuit on August 18, 2016. On the other hand, there is no record evidence from which the Court can conclude that the defendant engaged in "a malicious or reckless disregard for the ADA or for disabled [patients]." Kennedy v. Omegagas & Oil, LLC, No. 18-10302, 2018 WL 4183462, at *3 (11th Cir. Aug. 31, 2018). In Houston v. S. Mgmt. Corp., No. 213CV164FTM38UAM, 2013 WL 12304550, at *2 (M.D. Fla. Oct. 31, 2013), the district court "g[a]ve no weight either towards or against a finding of mootness" where "the [c]ourt [was] not in a position to evaluate the first Sheely factor because there [was] insufficient evidence to determine whether Defendant's alleged noncompliance with the ADA at the time of filing of the Amended Complaint was isolated or unintentional as opposed to a continuing and deliberate practice." Similarly here, the Court concludes that the first factor does not favor either party.

Order (DE# 207 at 19, 10/29/18).

The Court persists in its prior finding that the first factor is neutral. On the one hand, this was not an isolated incident. The evidence presented at the bench trial established that the defendant had a practice of placing linen bins and trash bins in locations which encroached over the clear floor space and/or maneuvering clearance (on the pull side of the door) in accessible restrooms. See Discussion, infra. Even when the defendant's employees did not follow this practice, it resulted in the trash bins encroaching over the clear floor space of the paper towel dispensers in violation of the ADA. Id. The plaintiff's experts found ADA violations at all five inspections. On the other hand, the bench trial revealed no evidence that the defendant exhibited a malicious or reckless disregard for the ADA or for disabled visitors to the facility. Kennedy, 2018 WL 4183462, at *3. In fact,

prior to the plaintiff's fall, the defendant had never received a complaint about its accessible restrooms.

This first factor does not favor either party.

### (ii)   Factor Two: Motive for Cessation of Offending Conduct

The second factor asks the Court to consider whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit. "[C]ourts are more likely to find that cessation moots a case when cessation is motivated by a defendant's genuine change of heart rather than his desire to avoid liability." Sheely, 505 F.3d at 1186.

As to the second factor, the defendant argues that: (1) it "was not aware of the majority of the ADA violations found by [Mr. Herrera] before his inspection on February 26, 2018; (2) it "took expediated action to remediate all of [57 alleged violations], by either fixing the issue or de-designating the restroom as accessible" within 30 days and (3) "the majority of the [alleged violations] were remediated by the time of [Mr. Herrera]'s second inspection [on May 3, 2018] and the facility was in substantial compliance with the ADA," as indicated by the Plaintiff's Notice (DE# 195). Motion at 8-9. The defendant further asserts that "[t]he three trash bin situations have been resolved, as have any potential linen bin issues." Id. at 9.

The second factor concerns the defendant's motivation for changing course. The second factor does not favor the defendant. It is obvious to the Court that the defendant made modifications to its facility in response to the plaintiff's litigation. In fact, the defendant did not make some of the modifications described in its Motion (the recessed

trash bins, the removal of an additional trash bin and the placement of a sign) until after the bench trial, where the Court made it clear that it was inclined to rule in favor of the plaintiff.[8]

Throughout this litigation and even in the instant Motion, the defendant has consistently maintained it "has a good faith belief that the ADA does not apply to the movable bins such as the trash bins or the linen bins." Motion at 9-10. The Eleventh Circuit has explained that "courts are more likely to find that cessation moots a case when cessation is motivated by a defendant's genuine change of heart rather than his desire to avoid liability." Sheely, 505 F.3d at 1186. There is nothing in this record from which the Court can discern "a genuine change of heart" by the defendant. Id. The defendant was motivated by a desire to avoid attorney's fees after the Court announced that it was inclined to enter an injunction against the defendant.

---

[8] At the conclusion of the bench trial, the Court announced that it was inclined to rule in favor of the plaintiff by issuing an injunction:

> [COUNSEL FOR THE DEFENDANT]: Do we put the fees aside for now? In other words, just deal with the injunction issue?
>
> THE COURT: Yes, because you need a ruling on that before you decide if there's fees.
>
> [COUNSEL FOR THE DEFENDANT]: Of course.
>
> THE COURT: Then we're going to go, assuming I -- which **I'm inclined right now to issue an injunctive order**, which means that fees are going to be awarded, then we're going to have to go into that litigation where, you know, the plaintiff is going to have to file their request, you're going to have to respond, they're going to have to reply. . . .

Trial Transcript (DE# 242 at 329-30, 2/19/19) (emphasis added); id. at 317 ("I just don't see how I don't issue injunctive relief in this case").

This second factor weighs against a finding of mootness.

### (iii) Factor Three: Acknowledging Liability

The third factor asks the Court to consider whether, in ceasing the challenged conduct, the defendant has acknowledged liability. The Eleventh Circuit has explained that "a defendant's failure to acknowledge wrongdoing ... suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." Sheely, 505 F.3d at 1187.

As to the third factor, the defendant states it "has a good faith belief that the ADA does not apply to the moveable bins such as the trash bins or the linen bins," nonetheless, the defendant has:

> made structural changes to the facility to ensure that the linen bins are not placed in accessible restrooms (by constructing a designated changing room), the two trash bins in Restrooms 2-202 and 205A are not in front of toilet seat covers (by recessing the trash cans in these bathrooms), and ensuring that a trash bin does not fall short of the required maneuvering clearance in Restroom 2058 (by installing signage stating that a trash bin is not to be placed there).

Motion at 9-10.

The third factor does not favor the defendant. The defendant has not acknowledged wrongdoing. To the contrary, throughout this litigation, the defendant has consistently maintained that the linen bins and trash bins are not barriers under the ADA.[9] Even after the bench trial, the defendant insists that

---

[9] In its prior Order, the Court determined that in some instances linen bins and trash bins could constitute barriers under the ADA. See Order (DE# 207 at 8-16, 10/29/18). "[T]he Court acknowledge[d] that there [were] cases, including cases in the Southern District of Florida, where district courts have dismissed ADA claims as they pertain to moveable

17

"Cleveland Clinic had (and still has) a good faith belief that the ADA does not apply to the movable bins such as the trash bins or the linen bins." Reply at 8. The defendant's insistence that it did nothing wrong makes it more likely that it will continue to engage in conduct which violates the ADA in the future.

The third factor weighs against a finding of mootness.

In sum, the defendant has not met its heavy burden of showing "that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Sheely, 505 F.3d at 1177 (quoting Laidlaw, 528 U.S. at 189). The plaintiff's claims concerning the linen bins and trash bins are not moot.

### iii.    Continued Need for Injunctive Relief

"Even beyond the three Sheely factors, the ultimate standard for mootness based on voluntary cessation is met . . . [where] the alleged violation cannot reasonably be expected to recur." Thomas v. Branch Banking & Tr. Co., 32 F. Supp. 3d 1266, 1270 (N.D. Ga. 2014) (citing Laidlaw, 528 U.S. at 189). For the reasons stated herein, the Court believes an injunction is needed to ensure the defendant's compliance with the ADA.

The Eleventh Circuit has noted that when a business makes structural changes to a facility to come into compliance with the ADA, it is unlikely that the business will incur

---

objects. . . . However, in those cases the objects were "of the typical portable variety, constantly moved not only by staff, but also by guests." Id. at 15 (quoting Ass'n for Disabled Americans, Inc. v. Key Largo Bay Beach, LLC, 407 F. Supp. 2d 1321, 1346 (S.D. Fla. 2005)). The evidence presented at the bench trial established that the linen bins and trash bins were, as a practical matter, not "moveable" objects. The plaintiff and persons with similar disabilities would not be able to physically move the linen bins and trash bins and it would be unreasonable for the Court to expect anyone to move the linen bins and trash bins when the defendant instructed its own staff to wear protective gloves to avoid disease. Thus, the instant case is distinguishable from Key Largo because the linen bins and trash bins constitute barriers.

additional expenses to undo those changes it made. See Kennedy v. Omegagas & Oil. LLC, No. 18-10302, 2018 WL 4183462, at *4 (11th Cir. Aug. 31, 2018) ("not[ing] it would be an unorthodox business practice to spend thousands of dollars on purchasing and installing new fixtures ... simply to rip them out and replace them with new, noncompliant fixtures."). The Court agrees that the defendant in the instant case is not likely to rip out a fixture such as a mirror, a sink or a toilet from the wall and reinstall it in such a manner as to violate the ADA. However, the defendant could easily revert to its long-standing practice of placing linen bins and trash bins in locations which encroach over the clear floor space of restroom features or encroach over the maneuvering clearance (on the pull side of the door) without undoing any costly structural changes to its facility or incurring any additional expense. Therefore, the instant case is different from the example provided in Kennedy.

The Court notes that the defendant throughout this litigation has consistently maintained that linen bins and trash bins cannot constitute barriers under the ADA. A defendant who insists it did not violate the ADA will likely return to engaging in the challenged conduct once the lawsuit is dismissed.

### a. Linen Bins

The defendant argues that the plaintiff has conceded that his ADA claim concerning the linen bins is moot because the plaintiff did not directly address the linen bins in his Response. See Reply at 2-3. The Court disagrees with the defendant. The plaintiff argued generally that his ADA claim was not moot. See Response at 8 (stating that the evidence presented at trial "established that the Defendant's policy of positioning

19

... **freestanding bins** resulted in repeated violations of the clear floor space of elements in the bathroom . . . and encroached upon the maneuvering clearance of doorways in the defendant's accessible restrooms") (emphasis added); id. at 9 (arguing that "[o]nly an injunction from this Court will stop Defendant's gamesmanship and dilatory conduct in addressing the numerous ADA issues that have been seen over the past few years of this litigation."). Therefore, the plaintiff did not make any concessions concerning his ADA claim.

The defendant further argues that the plaintiff's claim concerning the linen bins is moot because "the linen bins have been removed from the accessible restrooms," the defendant "now has a dedicated changing room in the Radiology Department and [it] is in the process of constructing an entire row of changing rooms in its new [MRI and CT suite]." Motion at 2-3. The defendant thus reasons that it "would have no reason to place linen bins in the accessible restrooms." Id. at 2.

At the outset, the Court does not believe that the defendant's unfinished construction project moots the plaintiff's claim. See Raetano v. Animal Hosp. of Tampa, Inc., No. 8:08-CV-2108-T-27TGW, 2008 WL 11336346, at *2 (M.D. Fla. Dec. 18, 2008) (retaining an architectural firm to draw plans for renovations did not moot plaintiff's ADA claim). The defendant has not provided the Court with a completion date for the MRI and CT suite. Thus, at present, this "entire row of changing rooms" does not exist. Even assuming arguendo, that the defendant has completed its MRI and CT suite, the Court continues to believe the plaintiff's claim concerning the linen bins is not moot.

Presently, there are no linen bins in the accessible restrooms in the MRI/Radiology Department. However, there are still linen bins in at least some non-accessible restrooms, in the exam rooms and in the former office which the defendant is using as a dedicated changing room. The reason the linen bins were placed in the accessible restrooms to begin with was because some patients preferred to use the restroom when changing out of their hospital gowns. The present use of a former office as a changing room does not address the fact that some patients may still prefer to use the restroom when changing out of their hospital gowns. While the linen bins have been removed from the accessible restrooms, they are still present in the MRI/Radiology Department's non-accessible restrooms, exam rooms and in the dedicated changing room and could easily be wheeled back into the accessible restrooms if an injunction is not issued.

Given the defendant's long-standing practice of keeping linen bins in the accessible restrooms, the defendant's history of placing linen bins in locations which encroached over the clear floor space of features in the accessible restrooms and the defendant's insistence that linen bins cannot be barriers under the ADA, the Court remains unconvinced that "it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Sheely, 505 F.3d at 1177 (quoting Laidlaw, 528 U.S. at 189).

### b.  Trash Bins

As to the trash bins, the defendant states that it has made modifications to three accessible restrooms (WNH2-202, WNH1-205A and Main Lobby Building 2950A/Hallway Restroom 2058) which render this claim moot. See Motion at 2. "Specifically, Cleveland

21

Clinic recessed the trash bins into the wall in [WNH]2-202 and [WNH]1-205A." Id. at 4. With respect to Main Lobby Building 2950A/Hallway Restroom 2058, the defendant removed "the additional trash bin" and "installed signage in this location in English and Spanish indicating that a trash bin is not to be placed in that space." Id. at 5.

The Court is not persuaded that it is "absolutely clear" that the trash bins will not again encroach over the clear floor space or maneuvering clearance of the accessible restrooms. Presently, there are five remaining accessible restrooms (WNH1-231, WNH1-205A, WNH2-202, WNH4-102 and Main Lobby Building 2950A/Hallway Restroom 2058). The defendant has installed recessed trash bins in two accessible restrooms (WNH2-202 and WNH1-205A) and placed a sign in Main Lobby Building 2950A/Hallway Restroom 2058. Unattached, plastic trash bins remain in WNH1-231 (Photograph 003 (DE# 195-1 at 15, 5/11/18)), WNH4-102 (Photograph 045 (DE# 195-1 at 15, 5/11/18)) and Main Lobby Building 2950A/Hallway Restroom 2058 (Photograph 090 (DE# 195-1 at 24, 5/11/18)). Given the defendant's established history of placing trash bins in locations which encroach over the clear floor space or maneuvering clearance of the accessible restrooms, the Court is not convinced that two recessed trash bins and a sign will make it "absolutely clear" that the defendant's cleaning staff will not place trash bins in locations which violate the ADA's clear floor space or maneuvering clearance requirements.

### (i)      Maneuvering Clearance Violation

The Court notes that during his first inspection, on February 26, 2018, Mr. Herrera found _four_ instances where a trash bin encroached over the maneuvering clearance on the pull side of the door (WNH1-231, WNH3-102, WNH4-102 and Main Lobby Building 2950A/Hallway Restroom 2058). See Herrera Expert Report Dated February 26, 2018

(DE# 239-57, 2/12/19). The defendant insists that Mr. Herrera's February 26, 2018 inspection was the first time the plaintiff raised any issue with a trash bin encroaching over the maneuvering clearance on the pull side of the door. See Trial Transcript (DE# 242 at 242, 2/19/19). While this is technically correct, it does not assure the Court that the defendant will maintain its facility ADA compliant absent an injunction.

Presumably, the defendant would have instructed its cleaning staff not to block the maneuvering clearance on the pull side of the door after Mr. Herrera identified this violation in his February 26, 2018 report and yet the violation remained in one accessible restroom (Main Lobby Building 2950A/Hallway Restroom 2058) when Mr. Herrera returned to the facility on May 3, 2018. See Herrera Expert Report Dated May 3, 2018 (DE# 195-1 at 13, 5/11/18).

While the defendant removed one of the trash bins and installed a sign, the Court notes that an unattached, plastic trash bins remains in Main Lobby Building 2950A/Hallway Restroom 2058 (Photograph 090 (DE# 195-1 at 24, 5/11/18)). Given the defendant's failure to keep the area behind the door clear of encroachments, the Court is not confident that a sign will prevent the defendant's staff from placing a trash bin where it encroaches over the maneuvering clearance on the pull side of the door.

### (ii)   Clear Floor Space Violation

The Court is also concerned with the defendant's ability to keep the clear floor space in the accessible restrooms free of encroachments.

On February 26, 2018, Mr. Herrera found <u>three</u> instances where a trash bin encroached over the clear floor space of a feature (WNH1-205A, WNH1-207[10] and WNH2-202). When Mr. Herrera returned to the facility on May 3, 2018, he found <u>two</u> instances where a trash bin encroached over the clear floor space of a feature (WNH1-205A and WNH2-202). The fact that Mr. Herrera found one less violation on his return visit, gives the Court little comfort. Mr. Herrera did not inspect WNH1-207 when he returned to the facility because the defendant had removed the accessible restroom designation. Thus, there was one less restroom for Mr. Herrera to inspect.

As with the maneuvering clearance violation, the Court expects that the defendant would have instructed its staff not to block the features in WNH1-205A and WNH2-202 following Mr. Herrera's February 26, 2018 inspection. Yet, when Mr. Herrera returned to the facility on May 3, 2018, he found trash bins encroaching over the clear floor space of features in WNH1-205A and WNH2-202.

The violations Mr. Herrera found in these accessible restrooms during his May 3, 2018 re-inspection were essentially the same violations he found on February 26, 2018. In WNH1-205A, Mr. Herrera had previously found that the trash bin encroached over the clear floor space of the paper towel dispenser. <u>See</u> Exhibit 222; Exhibit 162 at 32. The defendant "remedied" this violation by moving the trash bin to another location where it encroached over a different feature, the seat cover dispenser. <u>See</u> Exhibit 163 at Photograph 40. This is essentially the same violation: a trash bin encroaching over a

---

[10] At the time of Mr. Herrera's February 26, 2018 inspection WNH1-207 was an accessible restroom. The defendant removed WNH1-207's accessible designation before Mr. Herrera returned to the facility on May 3, 2018.

feature (a paper towel dispenser and later a seat cover dispenser) in the same accessible restroom (WNH1-205A). The ADA prohibits the encroachment of a feature, regardless of whether that feature is a paper towel dispenser or a seat cover dispenser.

In WNH2-202, Mr. Herrera had previously found that the trash bin encroached over the clear floor space of a baby changing station. See Exhibit 222; Exhibit 162 at 86. The defendant "remedied" this violation by swapping the baby changing station with a seat cover dispenser. The swapping of the baby changing station with a seat cover dispenser in WNH2-202 is particularly incomprehensible to the Court because the defendant left the trash bin **in the same place**. Predictably, this resulted in the trash bin encroaching over the newly installed seat cover dispenser. See Exhibit 163 at Photograph 45.

The defendant has now installed recessed trash bins in WNH2-202 and WNH1-205A. Notwithstanding the presence of these recessed trash bins, the above examples of careless "remediations" suggest to the Court that the defendant has failed to impart upon its staff the importance of keeping the clear floor space in accessible restrooms free of encroachments. The Court notes that the defendant has not adopted a written policy or instituted training to educate its staff on placing linen bins and trash bins in locations where they do not encroach over the clear floor space of features (regardless of whether the feature is a paper towel dispenser, a seat cover dispenser or a baby changing station) or the maneuvering clearance on the pull side of the door.

Based on this record, the Court has no assurances that the defendant would maintain its accessible restrooms free of encroachments absent an injunction. At the bench trial, Kerry Ninkovich, the Director of Environmental Services, testified that the

people who controlled the placement of the trash bins were the employees. If the defendant's employees do not understand he ADA's clear floor space and maneuvering clearance requirements, they are likely to return to the practice of placing linen bins and trash bins in locations which violate the clear floor space and maneuvering clearance requirements of the ADA – irrespective of the presence of a sign, recessed trash bins, the removal of linen bins from the accessible restrooms or the future completion of an MRI and CT suite. The record evidence in this case leads the Court to believe that the defendant will likely return to encroaching on the clear floor space of features (or the maneuvering clearance on the pull side of the door) in accessible restrooms if an injunction is not issued.

The Court concludes that an injunction is necessary to ensure that the defendant complies with the ADA's clear floor space and maneuvering clearance requirements in its accessible restrooms. An injunction is especially warranted given the defendant's failed attempts at keeping its accessible restrooms free of encroachments coupled with its continued insistence that it "has a good faith belief that the ADA does not apply to the movable bins such as the trash bins or the linen bins." Motion at 9-10. In sum, the Court does not believe "it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Sheely, 505 F.3d at 1177 (quoting Laidlaw, 528 U.S. at 189). The plaintiff's ADA claim is not moot.

**2.    Attorney's Fees**

The defendant argues that because the plaintiff's ADA claim is now moot, the plaintiff is not the prevailing party and is not entitled to attorney's fees. See Motion at 5-11.

26

For the reasons stated in this Order, the Court finds that the plaintiff's ADA claim is not moot. The plaintiff is entitled to injunctive relief and, as the prevailing party, is entitled to reasonable attorney's fees, including litigation expenses, and costs pursuant to 42 U.S.C. § 12205.

**3.     Plaintiff's Request for Rule 11 Sanctions**

The plaintiff argues that the instant Motion is sanctionable under Rule 11 of the Federal Rules of Civil Procedure. In its reply, the defendant states that the plaintiff has failed to comply with Rule 11's 21-day safe harbor provision. See Reply at 10 n.5; Fed. R. Civ. P. 11(c)(2) (stating that a motion for sanctions under Rule 11 "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service [of the challenged document] or within another time the court sets."). Because the plaintiff has failed to comply with Rule 11 and because the instant motion is not sanctionable, the Court will not entertain this argument.

## CONCLUSION

Based on the foregoing it is

ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss (DE# 247, 3/4/19) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida this 22 day of July, 2019.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE

27